## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2010-NMSC-004**

**Filing Date: November 23, 2009**

**Docket No. 31,192**

**REULE SUN CORPORATION,**

**Plaintiff-Respondent,**

**v.**

**JOE L. VALLES and JOANNE S. VALLES,**
**husband and wife,**

**Defendants-Petitioners.**

**ORIGINAL PROCEEDING ON CERTIORARI**
**Richard J. Knowles, District Judge**

Cadigan & Park Law Firm, P.C.
Michael J. Cadigan
Lawrence M. Marcus
Albuquerque, NM

for Petitioners

Robert D. Gorman, P.A.
Robert D. Gorman
Albuquerque, NM

Cheryl Thompson
Albuquerque, NM

for Respondent

Julie Ann Meade
Santa Fe, NM
for Amicus Curiae New Mexico Regulation
& Licensing Department

## OPINION

**SERNA, Justice.**

**{1}** Joe and Joanne Valles (Valleses) entered into a contract with a licensed contractor, Reule Sun Corporation (Reule) to apply stucco on their home. Reule hired an unlicensed subcontractor, Perez Plastering (Perez), to complete the project. Valleses were dissatisfied with both the initial stuccoing and re-stuccoing efforts and did not pay Reule. Reule filed a complaint alleging breach of contract and filed a lien against Valleses' property. The district court found in favor of Reule, foreclosed the lien on Valleses' property, and awarded damages to Reule. Valleses appealed and the Court of Appeals upheld the district court's decision. *Reule Sun Corp. v. Valles*, 2008-NMCA-115, ¶¶ 1, 31, 144 N.M. 736, 191 P.3d 1197. We initially denied Valleses' petition for writ of certiorari, but after motions for reconsideration and to file an amicus brief were granted, we granted the petition. We reverse.

## I. BACKGROUND AND PROCEEDINGS BELOW

**{2}** Valleses entered into a contract with Reule for the application of stucco to their home for the price of $11,350.51. Reule hired Claudio Perez, an unlicensed contractor doing business as Perez Plastering, to complete the project. Reule did not pay Perez a salary, but instead paid him on a contract-to-contract basis. Perez had his own state tax identification number and paid his own taxes. Reule did not consider Perez an employee for tax purposes.

**{3}** Valleses were dissatisfied with the stucco job and Reule agreed to apply another layer of stucco for an additional charge of $888.83, bringing the contract price to $12,239.34. After the second application was completed, Valleses were still dissatisfied with the results and they indicated that they did not want Reule to enter their property to remedy any mistakes or to finish the clean-up procedures. Valleses never paid Reule the balance due on the contract after an initial down payment of $1,000. Reule filed a claim of lien against Valleses' property, followed by a complaint for breach of contract and to foreclose claim of lien. Valleses answered the complaint and asserted various counterclaims.

**{4}** Following a bench trial, the district court found that Perez performed the contract "under the complete direction and control of [Reule]" and that the "subject of [the] lawsuit [did] not involve a claim for compensation by an unlicensed contractor in violation of NMSA 1978, § 60-13-30." The court also concluded that Reule had substantially performed its obligation under the contract and concluded that the protective purposes of the Construction Industries Licensing Act (CILA), NMSA 1978, §§ 60-13-1 to -59 (1967, as amended prior to 2003) were met. The district court found in favor of Reule, foreclosed the lien on Valleses' property, and awarded Reule damages, including prejudgment interest, attorney fees, and costs. Valleses appealed.

**{5}** In affirming the district court's judgment, the Court of Appeals applied the common law control test and held that Perez was Reule's employee and not a subcontractor. *Reule Sun Corp.*, 2008-NMCA-115, ¶¶ 11, 31. Then, relying on *Mascareñas v. Jaramillo*, 111 N.M. 410, 412, 806 P.2d 59, 61 (1991) and *Latta v. Harvey*, 67 N.M. 72, 75-76, 352 P.2d 649, 650-51 (1960) for the proposition that "an employee is not a contractor and is therefore not required to obtain a

2

contractor's license[,]" the Court concluded that it "need not reach the question of whether a duly licensed contractor may recover for work performed by an unlicensed subcontractor." *Reule Sun Corp.*, 2008-NMCA-115, ¶ 11.

{6}     We granted Valleses' petition for writ of certiorari, which raised three issues: (1) whether the Court of Appeals erred when it applied the common law employee exception to the licensing requirements of the CILA; (2) whether the Court of Appeals erred when it failed to review the application of the facts under a de novo standard of review; and (3) whether an unlicensed business entity can be an "employee" of a licensed entity. We hold that an individual who qualifies as a "contractor" under the CILA's definition is required to have a contractor's license when performing the specified acts described in the CILA, regardless of whether such an individual can be classified as an employee of a licensed contractor. Because we hold that Reule is precluded from maintaining an action for recovery of compensation for the work completed by Perez, we do not need to address the remaining two issues.

## II.     DISCUSSION

### A.     STANDARD OF REVIEW

{7}     We are asked to determine if the Court of Appeals erred when it applied a common law employee exception to the CILA's licensing requirements. This analysis is one of statutory construction, which we review de novo. *Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 8, 146 N.M. 473, 212 P.3d 361.

### B.     PRESERVATION

{8}     Reule argues that Valleses failed to preserve the issue regarding the application of the common law control test to determine if a contractor is exempted from the CILA's licensing requirements because they did not raise the issue in district court. Reule also argues that if application of the common law control test was an error, this Court should nonetheless refrain from reviewing the issue because the Valleses invited such error when they argued for its application below. We disagree with both contentions.

{9}     "To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked . . . ." Rule 12-216(A) NMRA; *see also Chrysler Credit Corp. v. Beagles Chrysler-Plymouth*, 83 N.M. 272, 273, 491 P.2d 160, 161 (1971) (a "matter not brought to the attention of the trial court cannot be raised for the first time on appeal").

{10}    In the district court, Valleses did not argue that the Section 60-13-3(D)(13) exception was the exclusive exception to the CILA's licensing requirement for employees, nor did they argue that classifying Perez as an employee via the common law control test was inappropriate. Valleses were not required to raise either issue at the district court level. Until the district court and the Court of Appeals employed the common law control test to determine that Perez was an employee and thus exempt from the CILA's licensing requirements, neither question now raised by Valleses was then

3

at issue. Rather, Valleses were only required to argue that the wage-earner exception was inapplicable to exclude Perez from the CILA licensing requirements and the record indicates that they had done so.

{11}     The testimony solicited at trial regarding the nature of the work relationship between Reule and Perez was primarily relevant to the question of whether Perez was a wage earner. For instance, Perez testified that he was paid by contract and not by salary and Reule testified that Perez paid his own taxes and was not an employee for tax purposes. Additionally, in their proposed findings of fact, Valleses asserted that (1) Perez was not Reule's employee at the time he entered into the contract; (2) he did not receive a salary from Reule, but instead was paid on a contract-to-contract basis; and (3) he provided Reule with his own federal and state tax identification numbers and was doing business as Perez Plaster. Finally, Valleses specifically referenced the Section 60-13-3(D)(13) exception to the CILA's definition of "contractor" in their proposed conclusions of law. Thus, Valleses adequately preserved the issue of whether the Section 60-13-3(D)(13) wage-earner exception applied to Perez.

{12}     We also hold that Valleses did not invite error when they referenced and included the common law control test in their arguments in district court. We have held that "to invite error and to subsequently complain about that very error would subvert the orderly and equitable administration of justice." *State v. Collins*, 2007-NMCA-106, ¶ 27, 142 N.M. 419, 166 P.3d 480 (internal quotation marks and citation omitted). A review of the record, however, indicates that Valleses' argument regarding the control test was an alternative argument to their primary contention that Reule was barred from bringing an action for recovery under Section 60-13-30(A). For instance, we find significant the sequence in which Valleses presented their proposed conclusions of law to the district court. Valleses first referred to the CILA in their proposed conclusions of law by including its purpose and specifically citing several of its subsections. They included the licensing and certification requirements, as well as the remedy afforded to a consumer who is a party to a construction contract with an unlicensed contractor of Subsections 60-13-1.1(A) and (C). Valleses also specifically included Section 60-13-30(A)'s bar on recovery for unlicensed contractors, the CILA's definition of "contractor," the wage-earner exception, Section 60-13-3(D)(13), case law that stands for the proposition that contractors are prohibited from transferring a license or certificate of qualification to another, and the penalties that may be incurred if a contractor allows a contractor's license to be used by an unlicensed person. Finally, Valleses proposed that the court conclude that "[t]he work performed by Perez is required to be licensed" and that "[Reule] violated the Act by permitting Perez . . . to work under [Reule's] license to perform the Contract."

{13}     Valleses only mentioned the common law control test after they proposed numerous conclusions of law pertaining to their arguments that Reule was in violation of the CILA, precluding them from recovery. Under the then-governing case law, the control test was used to exempt individuals from the CILA's licensing requirement. Valleses would have been remiss if they did not argue in reference to the control test and would have run the risk of conceding the point to Reule. *Cf. Sullivan v. Sullivan*, 82 N.M. 554, 555, 484 P.2d 1264, 1265 (1971) (holding that where a defendant did not object to action at trial, he cannot complain about such action to the Supreme

4

Court).  Valleses attempted to present a comprehensive case incorporating what they anticipated would be the necessary arguments; they did not "invite" the use of the control test, but instead referred to it in their argument because it was embedded in the inquiry.  Granted, Valleses could have been clearer and stated that the control test was an alternative argument.  However, for preservation purposes and in analyzing the invitation of error claim, we hold that the manner in which Valleses referenced the control test in their arguments did not amount to an invitation of the error.

## C.    STATUTORY ANALYSIS

**{14}**    "The guiding principle of statutory construction is that a statute should be interpreted in a manner consistent with legislative intent," which is determined by looking "not only to the language used in the statute, but also to the purpose to be achieved and the wrong to be remedied."  *Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, ¶ 10, 135 N.M. 397, 89 P.3d 69.  "We [will] give effect to the legislative intent by adopting a construction which will not render the statute's application absurd or unreasonable and will not lead to injustice or contradiction."  *Maes v. Audubon Indemnity Ins. Group*, 2007-NMSC-046, ¶ 11, 142 N.M. 235, 164 P.3d 934 (internal quotation marks and citation omitted).

**{15}**    Our statutory construction analysis begins by examining the words chosen by the Legislature and the plain meaning of those words.  *State v. Hubble*, 2009-NMSC-014, ¶ 10, 146 N.M. 70, 206 P.3d 579.  "Under the plain meaning rule, when a statute's language is clear and unambiguous, we will give effect to the language and refrain from further statutory interpretation.  We will not read into a statute language which is not there, especially when it makes sense as it is written."  *Id.* (internal quotation marks and citation omitted).  In addition to the plain meaning examination, "[w]e also consider the statutory subsection in reference to the statute as a whole and read the several sections together so that all parts are given effect."  *Bishop*, 2009-NMSC-036, ¶ 11.  Finally, the practical implications, as well as the statute's object and purpose are considered.  *Id.*

### 1.    Perez Was a "Contractor" Under the CILA and Was Required to Be Licensed

**{16}**    To determine whether the Court of Appeals erred when it applied a common law employee exception to the CILA licensing requirements, we must first determine if Perez was a "contractor" under the meaning of the statute.  The CILA defines a contractor as "any person who undertakes, offers to undertake . . . by himself or through others, contracting. Contracting includes constructing, altering, repairing, installing or demolishing any . . . building, stadium or other structure[.]"  Section 60-13-3(A)(2).  Additionally, the CILA includes subcontractors and specialty contractors in its definition of contractors.  Section 60-13-3(B).  There is no dispute that Perez, by virtue of applying stucco to Valleses' house, was a contractor under the meaning of the CILA.  Rather, the question for us to determine is whether Perez falls within an exclusion and so is exempted from the CILA's licensing requirement.

**{17}**    We next determine, therefore, whether Perez qualifies under one of the exceptions listed in Section 60-13-3(D).  This subsection lists several exceptions to the definition of a "contractor" under

5

the CILA. The most pertinent exception states that the definition of a "contractor" does not include "an individual who works only for wages[.]"  Section 60-13-3(D)(13).

{18}  To determine the meaning of this exclusion, we first look to the plain meaning of the language used by the Legislature. In this case, we have the benefit of the CILA's statutory definition of "wages." Section 60-13-2(I) defines "wages" as "compensation paid to an individual by an employer from which taxes are required to be withheld by federal and state law[.]" *Id.* Under the plain meaning rule, and by reading the exception in conjunction with the statutory definition of "wages," we interpret the Section 60-13-3(D)(13) exception to exclude from the definition of a "contractor" individuals who work only for compensation from which taxes are required to be withheld by federal and state law. In this case, it is clear that Reule did not withhold Perez's taxes. Perez does not qualify under the wage-earner exception to the definition of a "contractor" under the CILA and was thus required to possess a contractor's license. Because the statutory language is clear and unambiguous and its application to the facts of this case is straightforward, we "refrain from further statutory interpretation." *See Hubble*, 2009-NMSC-014, ¶ 10. We now discuss the Court of Appeals' decision not to address Section 60-13-30(A)'s preclusion following its determination through the common law control test that Perez was Reule's employee.

2.    **An Unlicensed Contractor's Classification Under the Common Law Control Test as an Employee of a Licensed Contractor Does Not Exempt the Unlicensed Contractor from the CILA's Licensing Requirements**

{19}  The Court of Appeals cited both *Mascareñas*, 111 N.M. at 412, 806 P.2d at 61, and *Latta,* 67 N.M. at 75-76, 352 P.2d at 650-51, for the proposition that "an employee is not a contractor and is therefore not required to obtain a contractor's license." *Reule Sun Corp.*, 2008-NMCA-115, ¶ 11. The Court also quoted the control test language from *Campbell v. Smith*, 68 N.M. 373, 377, 362 P.2d 523, 525-26 (1961): "'[t]he principal test to determine whether one is . . . an employee is whether the employer has any control over the manner in which the details of the work are to be accomplished.'" *Reule Sun Corp.*, 2008-NMCA-115, ¶ 13. After examining the relationship between Perez and Reule using the common law control test factors, the Court held that Perez was Reule's employee, and thus, the question of whether Reule could recover for work performed by Perez did not need to be reached. *Id.* ¶¶ 11-15.

{20}  Although the Court of Appeals cited *Mascareñas*, a careful review of that opinion reveals that the *Mascareñas* Court actually analyzed the employer-employee relationship under the lens of the Section 60-13-3(D)(13) wage-earner exception, and not the common law control test. 111 N.M. at 412, 806 P.2d at 61 ("If [the contractor was a wage-earning employee], he was not required to obtain a contractor's license pursuant to NMSA 1978, Section 60-13-3(D)(13)"). Although the *Mascareñas* Court did mention the common law control test, it did not use it in its analysis, but instead based its decision on the fact that the contractor was not paid an hourly wage and did not have time slips and tax forms. *Id.* Therefore, we do not include *Mascareñas* in the line of cases that used the common law control test to determine whether a contractor is exempt from the CILA's licensing requirements.

6

**{21}** On the other hand, *Latta* and *Campbell*, did use the control test in determining whether a contractor was exempt from the CILA's licensing requirements. Given our previous holding in *Latta*, the Court of Appeals appropriately analyzed the relationship between Perez and Reule under the lens of the common law control test to determine whether Perez was Reule's employee or an independent contractor. *Reule Sun Corp.*, 2008-NMCA-115, ¶¶ 11-15. After holding that Perez was sufficiently under Reule's control and therefore its employee, the Court also correctly followed precedent when it held that Perez was not required to obtain a license, rendering the bar for recovery articulated in Section 60-13-30(A) inapplicable. *Reule Sun Corp.*, 2008-NMCA-115, ¶ 22. We now take this opportunity to examine the history of the CILA as well as the rationale of our previous holdings in *Latta* and *Campbell* to determine whether the common law control test remains applicable.

**{22}** Since its enactment, the wage-earner exception has been incorporated into the CILA. In the 1939 session laws, the Legislature excepted wage earners from its definition of a "contractor":

> A contractor within the meaning of this act is a person, firm, . . . other than those engaged in highway or railroad construction, who for either a fixed sum, price, fee, percentage, or other compensation *other than wages*, undertakes or offers to undertake, or purports to have the capacity to undertake to construct, alter, repair . . . .

1939 N.M. Laws, ch. 197, § 3 (emphasis added). Likewise, in the 1953 compilation, the Legislature retained the exception. NMSA 1953, § 67-16-3 (1939, as amended through 1947). In the context of licensing requirements, the statute has never contained an exception for individuals who are classified as "employees" by using control test factors.

**{23}** Despite the absence of an "employee" exception in the controlling statute, the *Latta* Court nonetheless relied on an unlicensed contractor's classification as an employee under the common law control test to determine that the unlicensed contractor was barred from recovery. 67 N.M. at 75, 352 P.2d at 650-51. In that case, the plaintiff, an unlicensed contractor, was hired by one of the defendants to work on a water well. *Id.* at 74, 352 P.2d at 650. After the work was unsuccessful, both the plaintiff and that defendant agreed that the plaintiff would drill a second hole for a well and conduct additional work on the first well. *Id.* The plaintiff completed the work on the first well and moved his equipment to the location of the second well in preparation for further work. *Id.* The plaintiff brought an action against the defendants for the value of drilling work and for furnishing standby equipment and services. *Id.* The district court focused on the relationship between the plaintiff and the defendant and concluded that the "plaintiff was at all material times hereto the servant and employee of defendant." *Id.* at 75, 352 P.2d at 650 (internal quotation marks omitted). The district court rendered judgment in favor of the plaintiff and the defendants appealed. *Id.* at 74, 352 P.2d at 650.

**{24}** On appeal to this Court, the defendants contended that because the plaintiff did not have a contractor's license, and because his drilling was covered by the contractors licensing act as required by NMSA 1953, Section 67-16-3, he was barred from recovering under NMSA 1953, Section 67-16-

14 (1939, as amended through 1947). *Latta,* 67 N.M. at 75, 352 P.2d at 650-51. The *Latta* Court declined to address this contention because "the findings [made] it sufficiently plain that Latta was an employee, and not an independent contractor. At all times, the right of control of the performance of the work and the right to direct the manner in which the work would be done was in [defendant]." *Id.* at 75, 352 P.2d at 651. Thus, the *Latta* Court concluded that the plaintiff was not precluded from maintaining the action to recovery. *Id.* at 76, 352 P.2d at 651.

{25}     The following year, in *Campbell*, this Court also analyzed the relationship between a subcontractor and his employer by using the control test to determine whether the subcontractor was subject to the licensing requirement of NMSA 1953, Section 67-16-3. 68 N.M. at 377-78, 362 P.2d at 525-26. The defendants in *Campbell* hired the plaintiff subcontractor to construct a drive-in theater, wherein the plaintiff was to be responsible for purchasing all the equipment and supplies and for employing all necessary labor. *Id.* at 375, 362 P.2d at 524. The plaintiff alleged that he was to have "sole supervision and direction of the construction" as well as managerial duties once the theater was in operating condition. *Id.* The plaintiff was to receive a salary of $30 per week and a share of annual profits for his construction work and as the theater's manager. *Id.* The plaintiff completed the construction, and three months after the theater opened for business, he quit due to a disagreement with the defendants. *Id.* The plaintiff brought an action to recover the value of his services in connection with the theater's construction. *Id.* at 374, 362 P.2d at 524. A jury rendered a verdict in favor of the plaintiff and the defendants appealed.

{26}     On appeal, this Court used the control test to examine the relationship between the plaintiff and the defendants to determine whether the plaintiff was an independent contractor or the defendants' employee: "[t]he principal test to determine whether one is an independent contractor or an employee is whether the employer has any control over the manner in which the details of the work are to be accomplished." *Id.* at 377, 362 P.2d at 525-26. The Court further stated that "it is the right to control, not the exercise of it, that furnishes the test." *Id.* at 377, 362 P.2d at 526 (internal quotation marks and citation omitted). The Court found it significant that the defendants did not have the right to "terminate the employment at will which was said to give the employer the right to exercise control over the manner in which details of the work were to be exercised." *Id.* at 378, 362 P.2d at 526. Thus, the Court held that the plaintiff was an independent contractor under the meaning of NMSA 1953, Section 67-16-3, and because he failed to allege that he had a contractor's license, he was precluded from maintaining the action by NMSA 1953, Section 67-16-14. *Campbell*, 68 N.M. at 378, 362 P.2d at 526.

{27}     The Courts' creation of an "employee" exception is a clear deviation from the CILA. From its inception, the CILA has excluded individuals receiving compensation in the form of "wages" from the definition of "contractor" and from its licensing requirements. Never has the CILA provided that individuals who may be classified as "employees" under the control test be excepted from the definition of a "contractor," nor be exempt from its licensing requirements. Thus, the *Latta* and *Campbell* Courts improperly read a control test "employee" exception into the statute and effectively broadened the statutory exclusion beyond the scope that the Legislature intended.

{28}     In response to *Latta* and *Campbell*, the Legislature effectively abrogated the common law

8

control test as applied to the CILA by adding the definition of "wages" to the definitions section of the statute: "'wages' means compensation paid to an individual by an employer from which taxes are required to be withheld by federal and state law." 1967 N.M. Laws, ch. 199, § 2(I). This addition emphasized the Legislature's intent to limit the exception relating to employees only to wage earners, as opposed to the broader category of employees. Furthermore, the wage-earner exception was made more explicit when the Legislature reformatted the statute. The paragraph once containing the definition of a "contractor," along with its exceptions, was transformed into three different subsections. *Compare* 1939 N.M. Laws, ch. 197, § 3, *and* NMSA 1953, § 67-16-3, *with* 1967 N.M. Laws, ch. 199, § 3. The wage-earner exception was placed into its own subsection, Section 3(C)(13), and it provided that a "contractor" does not include "an individual who works only for wages[.]" 1967 N.M. Laws, ch. 199, § 3(C)(13).

{29}     We interpret the Legislature's addition of the definition of "wages," along with the statute's restructuring, as a repudiation of the control test as applied to the CILA. We hereby overrule the *Latta-Campbell* line of cases to the extent that they may be interpreted to allow an unlicensed contractor to be exempt from the CILA's licensing requirement because such a contractor may be classified as an employee of a licensed contractor under the common law control test. The Legislature has expressly designated wage earners to be excepted under the definition of "contractors" and to allow an individual, who would otherwise be required to have a license, to nonetheless be exempt because such an individual was under the "control" of a licensed contractor, would be adding an exception to the statute.

{30}     We next address Reule's contention that the Legislature has adopted the common law control test as evidenced by the addition of NMSA 1978, Section 60-13-3.1 (2005). Section 60-13-3.1 is titled "Employer and employee relationship; independent contractor; improper reporting; penalty; license sanctions[,]" and it provides:

> for purposes of the employer and employee relationship within those construction industries subject to the Construction Industries Licensing Act, a contractor who is an employer shall consider a person providing labor or services to the contractor for compensation to be an employee of the contractor and not an independent contractor unless the following standards indicative of an independent contractor are met[.]

The statute then lists six different standards, only one of which must be met to classify the individual as an independent contractor and not as an employee. In particular, the first standard provides that an individual is considered an independent contractor if "the person providing labor or services is free from *direction and control over the means and manner providing the labor or services*, subject only to the right of the person for whom the labor or services are provided to specify the desired results." Section 60-13-3.1(A)(1) (emphasis added). It may be tempting to equate the use of the specific language in Section 60-13-3.1(A)(1), which is consistent with the common law control test, and its placement at the beginning of the CILA with the Legislature's intent to adopt the common law control test for all CILA purposes. However, we disagree and hold that Section 60-13-3.1 does not reflect such an intent when determining whether a contractor is required to be licensed.

9

**{31}** The language contained in Section 60-13-3.1(A)(1) is consistent with the common law control test only in the context of examining the employer-employee relationship to classify a contractor as either an employee or an independent contractor. *See* § 60-13-3.1(A) ("*for purposes of the employer and employee relationship . . .* an employer shall consider a person providing labor or services to the contractor for compensation to be an employee of the contractor and not an independent contractor unless the following standards indicative of an independent contractor are met") (emphasis added)). There is no language contained in this section that indicates that the classification of a contractor as an employee will exempt such contractor from the CILA's licensing requirements or serve as an exception to the definition of "contractor."

**{32}** Further, as indicated in the compiler's note, Section 60-13-3.1 was not enacted as part of the CILA: "[t]his section was not enacted as part of the Construction Industries Licensing Act but has been compiled here for the convenience of the user." Thus, because the compiler and not the Legislature determined the location of this section in the statutes, the application effect normally present in sections placed at the beginning of an act, such as the purpose and general definition sections, is not present in this instance. *See, e.g.*, *Wilschinsky v. Medina*, 108 N.M. 511, 517, 775 P.2d 713, 719 (1989) (noting that when the Legislature provides definitions as part of a statute, those definitions are binding on the courts interpreting the statute).

**{33}** Also, reading the different subsections of Section 60-13-3.1 as a whole indicates that the employer-employee analysis is not applicable in the context of licensing, but instead in the context of unfair labor practice. *See* § 60-13-3.1(C) (describing the punishment for a contractor who intentionally and willfully reports an employee as an independent contractor when the employee does not meet the standards in Subsection A); § 60-13-3.1(D) (describing the implications of a conviction of a contractor for violating Subsection C). Thus, we hold that Section 60-13-3.1 does not indicate that the Legislature intended to adopt the common law control test for licensing requirement determinations.

**{34}** Allowing an individual to whom the CILA's definition of "contractor" applies, but who may also be classified as an employee of a licensed contractor via the common law control test, to be exempt from the CILA's licensing requirement impermissibly adds an exception to the statute. In addition, the Legislature has not adopted the control test for license requirement purposes. As a result, an unlicensed contractor's classification as an employee of a licensed contractor via the common law control test does not exempt the unlicensed contractor from the CILA's licensing requirements. Therefore, regardless of Perez's classification under the common law control test, he was required to have a license for the work he performed on Valleses' house.

**{35}** Given that Perez was not exempt from the CILA's licensing requirement, we now turn to the applicability of Section 60-13-30(A).

### 3. Section 60-13-30(A) Precludes Reule from Collecting Compensation for Work Performed by Perez

**{36}** Section 60-13-30(A) provides:

10

No contractor shall act as agent or bring or maintain any action in any court of the state for the collection of compensation for the performance of any act for which a license is required by the Construction Industries Licensing Act without alleging and proving that *such contractor* was a duly licensed contractor at the time the alleged cause of action arose.

(Emphasis added.) Applying the plain meaning rule to this section, the word "such" denotes that a contractor is prohibited from bringing any action to collect compensation for the work *that particular contractor* performed if he or she was unlicensed at the time of performance. Applying this interpretation to the facts of this case, it is clear that Perez, because he was not licensed at the time the alleged cause of action arose, would be prohibited from bringing or maintaining an action for compensation. However, the facts of this case present a different situation since a licensed contractor is attempting to maintain an action to collect compensation for work performed by another contractor; in this case, an unlicensed one.

{37} This section of the CILA expressly prohibits a contractor in a multi-party situation from acting as an agent for an unlicensed contractor during the collection process. Section 60-13-30(A). Black's Law Dictionary defines "agent" as "One who is authorized to act for or in place of another; a representative . . . ." Black's Law Dictionary 72 (9th ed. 2009). In this case, the record is clear that Perez has no stake in the outcome of the case. He has already been fully compensated by Reule for the work he completed and is not seeking any other form of compensation. Thus, Reule is not "acting for or in place of" Perez and cannot be considered his agent. We must now determine whether a licensed contractor is precluded from bringing or maintaining an action to collect compensation for work performed by an unlicensed contractor for whom the licensed contractor is not acting as an agent.

{38} Reading Section 60-13-30(A) as it relates to the CILA as a whole, we hold that it precludes a licensed contractor from bringing or maintaining an action to collect compensation for work performed by an unlicensed subcontractor. The purpose of the CILA is to "promote the general welfare of the people of New Mexico by providing for the protection of life and property by adopting and enforcing codes and standards for construction, alteration, installation, connection, demolition and repair work." Section 60-13-1.1. The CILA further states that:

To effect this purpose, it is the intent of the legislature that . . . examination, licensing and certification of the occupations and trades within the jurisdiction of the Construction Industries Licensing Act be such as to ensure or encourage the highest quality of performance and to require compliance with approved codes and standards and be, to the maximum extent possible, uniform in application, procedure and enforcement.

Section 60-13-1.1(A).

{39} The Legislature effects its purpose by requiring an applicant for a license to undergo extensive training and to have considerable construction experience and, once licensed, to comply

with stringent standards and codes under the penalty of law. *See, e.g.*, § 60-13-12(A) & (B) (prohibiting an unlicensed contractor from (1) acting as a licensed contractor for work specified in the Act, and (2) bidding on a contract); § 60-13-14(B)(8) (requiring an applicant for a license to "have had four years, within the ten years immediately prior to application, of practical or related trade experience dealing specifically with the type of construction or its equivalent for which the applicant is applying for a license"); § 60-13-23 (listing the grounds for a license suspension or revocation); § 60-13-59(C) & (D) (requiring every building permit to contain the name and license number of the general contractor and for it to be prominently displayed at the construction site).

{40}    In addition, the CILA contains provisions that effect its purpose by prohibiting an individual who has not undergone the stringent application procedures and who has not met the experience requirements from obtaining a license or from using another's license. *See, e.g.*, § 60-13-13.2 (providing that the "division shall not accept an application, shall not issue a license and shall require a change in the name of a proposed license if the proposed name is identical to or . . . so similar that it may cause confusion with a name on a pending application or an existing license"); § 60-13-18(A) (prohibiting the transferring of licenses). By not allowing a contractor's license to be transferred either intentionally or inadvertently to another individual, it is more likely that a person who has undergone the necessary training and testing will actually preform the activities specified in the Act. This is aligned with the stated purpose of "ensur[ing] or encourag[ing] the highest quality of performance" for the people of New Mexico. *See* § 60-13-1.1(A).

{41}    When reading Section 61-13-30(A) together with the other provisions in the CILA and considering its practical implications, we hold that our decision to preclude a licensed contractor from collecting for work performed by an unlicensed contractor is aligned with the CILA's purpose. This preclusion would encourage licensed contractors to hire only licensed individuals, which comports with the CILA's strict application and experience requirements because it does not allow for unlicensed contractors to evade the stringent standards otherwise required by the Act. Also, because our interpretation would not allow a licensed contractor who hires unlicensed contractors under the guise of his or her license to go unpunished, it reinforces the CILA's prohibition against the transferring of licenses. Further, our interpretation aligns with those provisions that provide penalties for non-compliance. Thus, when we read the CILA in its entirety and "construe each part in connection with every other part to produce a harmonious whole," *see State v. Javier M.*, 2001-NMSC-030, ¶ 27, 131 N.M. 1, 33 P.3d 1 (internal quotation marks and citation omitted), and consider the practical effects of our interpretation, Section 60-13-30(A) precludes a licensed contractor from collecting for work performed by an unlicensed contractor.

{42}    We did consider the competing practical considerations: the possibility that individuals such as Valleses in this case may be unjustly enriched if a licensed contractor is precluded from collecting compensation for work done by unlicensed individuals. However, our holding in *Triple B Corp. v. Brown & Root, Inc.*, 106 N.M. 99, 102, 739 P.2d 968, 971 (1987), has already addressed these competing policies:

> We will not recognize an equitable defense of unjust enrichment because the Legislature in Section 60-13-30 necessarily authorized the unjust enrichment of the

12

recipients of work performed by unlicensed contractors.  In order to protect the public from irresponsible or incompetent contractors, the Legislature chose to harshly penalize unlicensed contractors by denying them access to the courts to collect compensation for work performed.  Its policy must override the judicial principle that disfavors unjust enrichment.

(Internal citation omitted.)  Thus, given the CILA's purpose, our holding aims to protect the general public and does not focus on those contractors who gamble when hiring unlicensed subcontractors to complete work for which a license is required.

## III.    CONCLUSION

{43}    We hold that an individual who qualifies as a contractor under the CILA is required to have a license when performing the specified acts as described in the CILA, regardless of whether such an individual can be classified as an employee of a licensed contractor under the common law control test.  Perez was not exempt from the CILA's licensing requirement, and Reule was therefore precluded by Section 60-13-30(A) from bringing or maintaining an action for collection.  We reverse the Court of Appeals and vacate the district court's judgment in favor of Reule.

**{44}    IT IS SO ORDERED.**

_____
**PATRICIO M. SERNA, Justice**

**WE CONCUR:**

_____
**EDWARD L. CHÁVEZ, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**CHARLES W. DANIELS, Justice**

**Topic Index for *Reule Sun Corp. v. Valles*, No. 31,192**

| | |
|---|---|
| **MS** | **MISCELLANEOUS STATUTES** |
| MS-CL | Construction Industries Licensing Act |
| | |
| **ST** | **STATUTES** |

ST-AP          Applicability
ST-IP          Interpretation
ST-RC          Rules of Construction