**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:** _____

**Filing Date: July 1, 2014**

**Docket No. 33,215**

**S. LOUIS LITTLE,**

      **Plaintiff-Appellant,**

**v.**

**PAULETTE JACOBS,**

      **Defendant,**

**and**

**THOMAS R. BAIGAS,**

      **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Jeff F. McElroy, District Judge**

The Herrera Firm, P.C.
Samuel M. Herrera
Taos, NM

for Appellant

New Mexico Legal Center, P.C.
Lee Boothby
Taos, NM

for Appellee

**OPINION**

**BUSTAMANTE, Judge.**

**{1}** Plaintiff-Appellant S. Louis Little appeals from the district court's order granting

1

Defendant-Appellee Thomas Baigas' motion to dismiss based on the ten-year limitation period contained in NMSA 1978, Section 37-1-27 (1967), a statute of repose. Plaintiff argues that the district court erred in finding that Section 37-1-27 applied to an unlicensed contractor. We agree. Given the strong public policy against unlicensed contractors in New Mexico, allowing an unlicensed contractor the benefit of the ten-year statute of repose would be contrary to the intent of the Legislature. Accordingly, we reverse and remand to the district court for proceedings consistent with this opinion.

## BACKGROUND

**{2}** In April 2000 Defendant constructed a deck for Paulette Jacobs (Jacobs) at her rental property in Arroyo Seco, New Mexico. In 2009, Plaintiff stayed at Jacobs' rental property and was injured when he fell off of the deck and into a ditch. Plaintiff filed an action against Jacobs in August 2011. In January 2013 Jacobs identified Defendant as the individual who constructed the deck. Plaintiff then filed a second amended complaint adding Defendant as a party to the suit.

**{3}** In the amended complaint, Plaintiff alleged that Defendant is a licensed contractor in the State of New Mexico. In his answer, Defendant denied that he was licensed at the time that he built the deck. Defendant also asserted, as an affirmative defense, that Plaintiff's claim was time barred by Section 37-1-27. Defendant then filed a motion to dismiss arguing that, because Plaintiff's action was filed more than ten years after the date of substantial completion of the deck in April 2000, the claim should be dismissed.

**{4}** In response, Plaintiff argued, that because Defendant was an unlicensed contractor at the time that he built the deck, he was not entitled to the benefit of the limitation period in Section 37-1-27. However, the district court disagreed with Plaintiff that Section 37-1-27 only applied to licensed contractors and therefore granted Defendant's motion to dismiss. On appeal, Plaintiff argues that the district court erred in finding that Section 37-1-27 could be invoked by an unlicensed contractor.

## DISCUSSION

**{5}** Although the parties characterize the motion before the district court as a motion to dismiss, when a party submits material outside the pleadings, and the material is not excluded by the district court, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 1-056 [NMRA]." Rule 1-012(B) NMRA. We therefore construe the district court's decision in this case as an order granting summary judgment.

**{6}** "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "We review these legal questions de novo." *Id.* This case presents no disputed issue of fact. The sole issue presented on appeal is whether Section 37-1-27 applies to unlicensed contractors.

**Relevant Principles of Statutory Interpretation**

**{7}** Whether Section 37-1-27 applies to unlicensed contractors is a matter of first impression and requires this Court to engage in statutory interpretation. "Statutory interpretation is an issue of law that we review de novo." *Moongate Water Co., Inc. v. City of Las Cruces*, 2013-NMSC-018, ¶ 6, 302 P.3d 405. When construing statutes, "our charge is to determine and give effect to the Legislature's intent." *Id.* (internal quotation marks and citation omitted).

**{8}** There are two approaches "relating to how a court performs the task of applying a statute when the parties to a case disagree over the statute's meaning"—the "plain meaning" rule and the "rejection-of-literal-language" approach. *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶¶ 1-3, 117 N.M. 346, 871 P.2d 1352. The plain meaning rule, which Defendant relies on in this case, provides that "statutes are to be given effect as written and, where they are free from ambiguity, there is no room for construction." *Id.* ¶ 2 (internal quotation marks and citation omitted). The other approach, relied on by Plaintiff, was summarized in *Helman* as follows:

> Courts will not add words except where necessary to make the statute conform to the obvious intent of the [L]egislature, or to prevent its being absurd. But where the language of the legislative act is doubtful or an adherence to the literal use of words would lead to injustice, absurdity or contradiction, the statute will be construed according to its obvious spirit or reason, even though this requires the rejection of words or the substitution of others.

*Id.* ¶ 3 (internal quotation marks and citation omitted).

**{9}** Both this Court and our Supreme Court "have decided cases using both approaches." *Id.* ¶ 18. Our Supreme Court has advised that "courts must exercise caution in applying the plain meaning rule." *Id.* ¶ 23; *accord United States v. Reese*, ____-NMSC-___, ¶ 19, ___ P.3d ___ (No. 33,950, May 1, 2014). The Court explained,

> Its beguiling simplicity may mask a host of reasons why a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate (i.e., nonfrivolous) differences of opinion concerning the statute's meaning. In such a case, it can rarely be said that the legislation is indeed free from all ambiguity and is crystal clear in its meaning.

*Helman*, 1994-NMSC-023, ¶ 23. Therefore, "when the literal wording of the language . . . creates consequences that the [L]egislature could not have desired, or when the literal meaning leads to conclusions that are unjust or nonsensical, then the Court must look beyond the four corners of the statute." *Inv. Co. of the Sw. v. Reese*, 1994-NMSC-051, ¶ 13, 117 N.M. 655, 875 P.2d 1086 (citations omitted). With these principles in mind, we turn to the

statute at issue in this case.

**History and Purpose of Section 37-1-27**

**{10}** Section 37-1-27 provides, inter alia, that "[n]o action . . . against any person performing or furnishing the construction or the design, planning, supervision, inspection or administration of construction . . . shall be brought after ten years from the date of substantial completion." "[U]nlike a statute of limitations, this [s]tatute begins to run from a specific date unrelated to the date of injury and thus may abrogate a cause of action before it accrues." *Saiz v. Belen Sch. Dist.*, 1992-NMSC-018, ¶ 41 n.12, 113 N.M. 387, 827 P.2d 102. A statute of limitations, on the other hand, "begins to run when a plaintiff's cause of action accrues or is discovered." *Id.* This distinction makes Section 37-1-27 a statute of repose. *Id.* ¶ 41.

**{11}** Section 37-1-27 and its predecessor were enacted "in the wake of judicial decisions exposing those involved in the construction industry to greater liability." *Coleman v. United Eng'rs & Constructors, Inc.*, 1994-NMSC-074, ¶ 10, 118 N.M. 47, 878 P.2d 996. Prior to the enactment of the statute, "exposure came when the cause of action accrued[,]" which typically does not happen until an injury occurs. *Howell v. Burk*, 1977-NMCA-077, ¶ 17, 90 N.M. 688, 568 P.2d 214. Because an injury could arise years after a construction project was completed, licensed contractors continued to be exposed to liability long after relinquishing control over a project. *Id.* The Legislature responded by limiting liability to those in the construction industry to ten years after substantial completion of a project. In this case, we must decide whether the Legislature intended for unlicensed contractors to benefit from this statute of repose. To make this determination, we first examine the Legislature's treatment of unlicensed contractors in New Mexico. *See Pub. Serv. Co. of N.M. v. Diamond D Constr. Co.*, 2001-NMCA-082, ¶ 50, 131 N.M. 100, 33 P.3d 651 ("[W]e read the provisions of the statute together with statutes pertaining to the same subject and seek to achieve a harmonious result." (internal quotation marks and citation omitted)).

**Unlicensed Contractors in New Mexico**

**{12}** New Mexico statutes and case law interpreting those statutes clearly reflect a strong public policy against unlicensed contractors. The Construction Industries Licensing Act (CILA), NMSA 1978, §§ 60-13-1 to -59 (1967, as amended through 2013), was enacted to "promote the general welfare of the people of New Mexico by providing for the protection of life and property by adopting and enforcing codes and standards for construction . . . work." Section 60-13-1.1. In *Mascarenas v. Jaramillo*, 1991-NMSC-014, ¶ 14, 111 N.M. 410, 806 P.2d 59, our Supreme Court discussed the purpose of CILA and emphasized:

> The object sought to be accomplished by the Act is a healthy, ordered market in which consumers may contract with competent, reliable construction contractors who have passed the scrutiny of a licensing division. The wrong to be remedied is the exploitation of the public by incompetent and

4

unscrupulous contractors who are unable or unwilling to obtain a license. In effect, the wrongs to be remedied are circumstances which permit unlicensed contractors to flourish and profit at the expense of the public.

*Id.* To that end, Section 60-13-12(A) provides that "[n]o person shall act as a contractor without a license." This prohibition has significant consequences for those who choose to disregard it. Indeed, "[a]ny person who acts in the capacity as a contractor within the meaning of [CILA] without a license" faces criminal charges, which could result in fines and imprisonment. Section 60-13-52(A); *see State v. Jenkins*, 1989-NMCA-044, ¶¶ 1, 3, 108 N.M. 669, 777 P.2d 908 (affirming the defendant's conviction for contracting without a license and resulting sentence, including ninety days probation and restitution). In addition to possible criminal sanctions, unlicensed contractors have no right to file an action for compensation for any work performed without a license. Section 60-13-30. This is the case even when the work was "fully and satisfactorily performed." *Triple B Corp. v. Brown & Root, Inc.*, 1987-NMSC-058, ¶ 9, 106 N.M. 99, 739 P.2d 968. In short, "[i]t is apparent that the [L]egislature casts a harsh eye on contracting without a license." *Gamboa v. Urena*, 2004-NMCA-053, ¶ 12, 135 N.M. 515, 90 P.3d 534.

**{13}** Consistent with this policy, our Supreme Court has held that contracts entered into with unlicensed contractors are contrary to public policy and, therefore, "an unlicensed contractor may not retain payments made pursuant to a contract which requires him to perform in violation of [CILA]." *Mascarenas*, 1991-NMSC-014, ¶ 16. This is true even when the consumer knows that the contractor is unlicensed. *Id.* The Court has also rejected attempts by unlicensed contractors to recover under the equitable defense of unjust enrichment. *Triple B Corp.*, 1987-NMSC-058, ¶ 12; *accord Reule Sun Corp. v. Valles*, 2010-NMSC-004, ¶ 42, 147 N.M. 512, 226 P.3d 611. In doing so, our Supreme Court recognized and adhered to the Legislature's policy against unlicensed contractors. *Triple B Corp.*, 1987-NMSC-058, ¶ 12 ("We will not recognize an equitable defense of unjust enrichment because the Legislature in Section 60-13-30 necessarily authorized the unjust enrichment of the recipients of work performed by unlicensed contractors. . . . Its policy must override the judicial principle that disfavors unjust enrichment."). Thus, New Mexico statutes and case law interpreting CILA clearly "highlight the [L]egislature's complete intolerance of unlicensed contractors." *Gamboa*, 2004-NMCA-053, ¶ 14.

**The Legislature Did Not Intend to Permit Unlicenced Contractors to Benefit From the Limitations Period in Section 37-1-27**

**{14}** Defendant relies on the plain language of the statute to argue that the Legislature intended to permit unlicensed contractors to invoke the time limitation in Section 37-1-27. Defendant asserts that the statute clearly precludes suit after ten years "against *any person* performing or furnishing . . . construction." Section 37-1-27 (emphasis added). Plaintiff, on the other hand, relies on the use of the word "contractor" in the following excerpt to argue that the statute only applies to licensed contractors: "The date of substantial completion shall mean the date when construction is sufficiently completed so that the owner can occupy

5

or use the improvement for the purpose for which it was intended . . . or the date established by the contractor as the date of substantial completion[.]" *Id.*

**{15}** If we were to look only to the statute's plain meaning and ignore CILA and its purpose, Defendant's argument would be reasonable. Read literally, Defendant falls into the category of "any person" performing construction. Furthermore, there is nothing in the definition of "contractor" or "contracting" that limits those definitions to licensed contractors. Section 60-13-3(A) ("[C]ontractor . . . means any person who undertakes . . . contracting. Contracting includes constructing, altering, repairing, installing or demolishing. . . .").

**{16}** While we recognize that the plain language of the statute does not specifically limit its application to licensed contractors, applying the statute as Defendant asks us to do would tend to undermine the purpose of Section 37-1-27 and CILA. Therefore, we conclude that the second approach to statutory interpretation described earlier is the appropriate one to follow in this case. We look beyond the four corners of the statute because the literal wording of Section 37-1-27 creates consequences that the Legislature could not have desired and which, if applied literally, would lead to conclusions that are contrary to the Legislature's intent—a result that we cannot permit. *See Inv. Co. of the Sw.*, 1994-NMSC-051, ¶ 13.

**{17}** As we explained above, the limitation period set forth in Section 37-1-27 is an important benefit to contractors. It reduces their exposure to liability by establishing a clear deadline within which an action may be brought. Because "[t]he public policy behind the licensing requirement of [CILA] is so strong[,]" *Mascarenas*, 1991-NMSC-014, ¶ 16, we conclude that the Legislature could not have intended unlicensed contractors to benefit from Section 37-1-27.

**{18}** Given our Legislature's position on unlicensed contracting, we cannot extend unlicensed contractors any semblance of legitimacy under the law. A statute that was enacted to shield those in the construction industry from liability after a certain point, requires that those protected by it be legitimately in that industry; i.e., be licensed. It would be inconsistent with our Legislature's policy to afford protection to someone for work that they performed in violation of the law.

**{19}** We note that, we have previously rejected the argument that because the statute protects "any person," owners who design and construct an improvement to real property and continue to own it after the ten-year period are protected. *Jacobo v. City of Albuquerque*, 2005-NMCA-105, ¶¶ 6-7, 138 N.M. 184, 118 P.3d 189. Although the reasoning behind our holding in that case is not applicable here, it nonetheless demonstrates that "any person" refers to a select group of individuals—those involved in the construction industry. *Id.* ¶ 9 ("Section 37-1-27 . . . [was] specifically designed to protect architects, builders, and those involved in the construction industry."). Thus, our holding determining that only those legitimately involved in that industry are entitled to the protection of Section

6

37-1-27 is consistent with the prior decisions of this Court.

**{20}** The effect of our holding is to create another detriment to contracting without a license, which is consistent with the purpose of CILA. While Defendant argues that this Court should apply the statute to his benefit because, even though he is barred from seeking affirmative relief by our state's statutes, he should not be precluded from defending against claims, **[AB 19-20]** our holding does not prevent an unlicensed contractor from defending an action against him. Rather, it simply refuses to allow a ten-year cut off that was intended to protect those legitimately in the construction industry.

**CONCLUSION**

**{21}** We hold that Section 37-1-27 does not permit unlicensed contractors to invoke its protections. We therefore reverse the district court's order in favor of Defendant. Because we conclude that Section 37-1-27 does not apply to unlicensed contractors, and that holding is dispositive, we do not address Plaintiff's argument regarding *Terry v. New Mexico State Highway Commission*, 1982-NMSC-047, 98 N.M. 119, 645 P.2d 1375.

**{22}** To the extent that the parties disagree regarding which limitation period does apply if Section 37-1-27 does not,**[RP 206]** we leave it to the district court to resolve that issue in the first instance.

**{23}** **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

7