**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2016-NMCA-083

Filing Date:  July 12, 2016

Docket No. 33,775

JASON B. DAMON and
MICHELLE T. DAMON,

   Plaintiffs-Appellants,

v.

VISTA DEL NORTE DEVELOPMENT, LLC,

   Defendant-Appellee,

and

BRIAN MCGILL, JANELLE MCGILL, CARRIE TRAUB, COLDWELL
BANKER LEGACY STILLBROOKE HOMES, INC., STRUCSURE HOME
WARRANTY, LLC,

   Defendants.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Nan G. Nash, District Judge

Tal Young, P.C.
Steven Tal Young
Albuquerque, NM

for Appellants

Allen, Shepherd, Lewis & Syra, P.A.
Daniel W. Lewis
Jenny L. Jones
Albuquerque, NM

for Appellees

**OPINION**

1

**VIGIL, Chief Judge.**

{1}     This case comes before us after summary judgment was entered in favor of Defendant Vista del Norte Development, LLC (Vista) on the basis that the complaint brought by Jason and Michelle Damon (Plaintiffs) is barred by the ten-year statute of repose that limits liability for defective or unsafe conditions on a construction project to ten years after substantial completion of the project. NMSA 1978, § 37-1-27 (1967). We affirm.

## I.     BACKGROUND

{2}     City law required Vista to enter into an Agreement to Construct Public Subdivision Improvements with the City of Albuquerque (the City) in order to develop a subdivision within the City to be called The Estates at Vista del Norte. The agreement was made on December 22, 2000, and it required Vista to install and complete "to the satisfaction of the City" specified infrastructure improvements in the proposed subdivision on or before March 22, 2002. The required improvements consisted of paving, sidewalk installation, waterlines, sanitary sewer lines, storm drains, dirt work, and engineering for all of the work.

{3}     On May 1, 2001, Vista and Stillbrooke Homes, Inc. (Stillbrooke) entered into a purchase agreement in which Stillbrooke agreed to purchase the subdivision from Vista and build homes on the lots within the subdivision. The agreement includes Lot 17, the lot on which the house at issue in this case was built.

{4}     On February 26, 2002, the City issued to Vista its Certificate of Completion and Acceptance, which certified that Vista had constructed the infrastructure improvements in compliance with the December 22, 2000, Agreement to Construct Public Subdivision Improvements. On July 25, 2003, Vista conveyed Lot 17 in the subdivision to Stillbrooke through a special warranty deed. Stillbrooke built a home on Lot 17 and sold the home to Defendants Brian and Janelle McGill in February 2004. On or about June 11, 2006, Plaintiffs purchased the home from the McGills.

{5}     On December 7, 2012, Plaintiffs filed suit against several individuals and entities seeking relief in different causes of action based on their discovery, after their purchase of the home, that it "began to exhibit signs of structural failure." Pertinent to Vista, the complaint alleges that Vista developed the subdivision, and that structural engineering studies reveal that "the home suffers from improper subsurface preparation[.]" Specifically, the complaint alleges that "Vista had developed the subdivision on the site of what was once utilized as an aggregate [pit]" and that there is "documented distress to the above-grade/visible portions of the home as a result of excessive post-construction movement of the post-tensioned structural slab." In addition, the complaint alleges that "water is infiltrating the soils beneath and around the residence from surface [or] near-surface sources, causing soil settlement, and leading to the cosmetic and functionality issues such that load bearing elements such as foundations and loa[d]-bearing walls have been affected." Plaintiffs also allege that because of Vista's improper site selection, improper soil compaction, and

2

improper surface preparation of the site, the home suffers from structural instability and ongoing settlement issues that will ultimately result in failure of the foundation and structural failure.

**{6}** Vista filed a motion for summary judgment contending that Plaintiffs' claims are barred by the ten-year statute of repose in Section 37-1-27. Under Section 37-1-27, the ten-year bar begins to run from the date of "substantial completion" of a physical improvement to real property. As we discuss in greater detail below, the statute describes three ways for "substantial completion" to occur, and the ten years begins to run from the date that occurs last. Vista contended that "substantial completion" occurred when it completed its work on the site and the City issued its Certificate of Completion and Acceptance to Vista on February 26, 2002. Plaintiffs' response countered that "substantial completion" occurred when the home was occupied by the McGills in 2004. The district court agreed with Vista, and because the complaint was filed on December 7, 2012, which was more than ten years after February 26, 2002, when the City issued Vista the Certificate of Completion and Acceptance, it granted summary judgment in favor of Vista on all claims made by Plaintiffs against Vista. Plaintiffs appeal.

## II.    DISCUSSION

### A.    Standard of Review and Principles of Statutory Construction

**{7}** "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Little v. Jacobs*, 2014-NMCA-105, ¶ 6, 336 P.3d 398 (internal quotation marks and citation omitted). On appeal, "[w]e review the district court's grant of summary judgment de novo." *Brown v. Kellogg*, 2015-NMCA-006, ¶ 5, 340 P.3d 1274, *cert. denied* 2014-NMCERT-011, 339 P.3d 841.

**{8}** Plaintiffs' argument on appeal requires us to construe Section 37-1-27. This presents us with a question of law, which is also subject to our de novo review. *Deutsche Bank Nat. Trust Co. v. Maclaurin*, 2015-NMCA-061, ¶ 5, 350 P.3d 1201. "When construing statutes, our charge is to determine and give effect to the Legislature's intent." *Little*, 2014-NMCA-105, ¶ 7 (internal quotation marks and citation omitted). In determining legislative intent, "we look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Diamond v. Diamond*, 2012-NMSC-022, ¶ 25, 283 P.3d 260 (internal quotation marks and citation omitted). "Where the language of a statute is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Id.* (internal quotation marks and citation omitted). "Finally, the practical implications, as well as the statute's object and purpose are considered." *Reule Sun Corp. v. Valles*, 2010-NMSC-004, ¶ 15, 147 N.M. 512, 226 P.3d 611.

### B.    Analysis

**{9}**     Section 37-1-27 is a statute of repose. As such, its purpose is "to put an end to prospective liability for wrongful acts that, after the passage of a period of time, have yet to give rise to a justiciable claim." *Garcia ex rel. Garcia v. La Farge*, 1995-NMSC-019, ¶ 14, 119 N.M. 532, 893 P.2d 428. A statutory triggering event determines when the statute of repose begins to run, and the time runs "without regard to when the underlying cause of action accrues and without regard to the discovery of injury or damages." *Id.* Such a statute "terminates the right to any action after a specific time has elapsed, even though no injury has yet manifested itself." *Cummings v. X-Ray Assocs. of N.M., P.C.*, 1996-NMSC-035, ¶ 50, 121 N.M. 821, 918 P.2d 1321 (discussing the medical malpractice statute of repose). Section 37-1-27 states:

> No action to recover damages for any injury to property, real or personal, or for injury to the person, or for bodily injury or wrongful death, arising out of the defective or unsafe condition of a physical improvement to real property, nor any action for contribution or indemnity for damages so sustained, against any person performing or furnishing the construction or the design, planning, supervision, inspection or administration of construction of such improvement to real property, and on account of such activity, shall be brought after ten years from the date of substantial completion of such improvement; provided this limitation shall not apply to any action based on a contract, warranty or guarantee which contains express terms inconsistent herewith.

Thus, the triggering event under Section 37-1-27 is the date of substantial completion of a physical improvement to real property.

**{10}**     This statute of repose was "enacted to provide a measure of protection against claims arising years after substantial completion of construction projects." *Coleman v. United Eng'rs & Constructors, Inc.*, 1994-NMSC-074, ¶ 10, 118 N.M. 47, 878 P.2d 996 (internal quotation marks and citation omitted). The Legislature determined such protection was a necessity "in the wake of judicial decisions exposing those involved in the construction industry to greater liability." *Id.* Prior to its enactment, licensed contractors were exposed to liability when the cause of action accrued, which generally did not happen until an injury occurred. *See Little*, 2014-NMCA-105, ¶ 11. Contractors were therefore exposed to potential liability long after they surrendered control of the construction project, because an injury could occur many years after the project was completed. *See id.* The Legislature's response was to limit potential liability to ten years after substantial completion of the project. *See id.*

**{11}**     We first determine whether Vista constructed a "physical improvement to real property" under Section 37-1-27. We have previously defined an "improvement" under Section 37-1-27 as "the enhancement or augmentation of value or quality: a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Mora-San Miguel Elec. Coop., Inc. v. Hicks &*

4

*Ragland Consulting & Eng'g Co.*, 1979-NMCA-082, ¶ 4, 93 N.M. 175, 598 P.2d 218 (internal quotation marks and citation omitted). In keeping with this definition, we concluded that construction of a power line is a physical improvement that falls within the intent of Section 37-1-27, because "a given parcel of land which has electrical service available is more valuable than a comparable parcel without such service." *Id*. In *Delgadillo v. City of Socorro*, 1986-NMSC-054, ¶¶ 7- 8, 104 N.M. 476, 723 P.2d 245, our Supreme Court agreed with the definition of "improvement" we provided in *Mora-San Miguel*, and added that "[i]n applying the definition of improvement, courts also consider whether the improvement adds to the value of the property for the purpose of its intended use." *Delgadillo*, 1986-NMSC-054, ¶ 8 (relying on *Van Den Hul v. Baltic Farmers Elevator Co.*, 716 F.2d 504, 508 (8th Cir. 1983)). Our Supreme Court then held that the installation of new gas lines and routing existing gas lines to facilitate the construction of a new highway in a city was a "physical improvement to real property" because it was for the intended purpose of providing gas service, and "[a] parcel of land that has service available is more valuable than a comparable parcel without such service." *Id.* ¶¶ 8-9.

**{12}** In keeping with *Mora-San Miguel* and *Delgadillo*, we conclude as a matter of law that the infrastructure improvements Vista constructed to develop The Estates at Vista del Norte subdivision constitute "physical improvements to real property" under Section 37-1-27. The paving, sidewalk installation, sanitary sewer lines, storm drains, dirt work, and engineering performed by Vista improved the real estate, were permanent in nature, and required the expenditure of labor and money. Importantly, the improvements significantly enhanced the use and value of the property for its intended use as a subdivision. The land was more valuable with the infrastructure improvements constructed by Vista than it was without them.

**{13}** We now turn to determining when construction of these infrastructure improvements was substantially completed, because Section 37-1-27 bars a cause of action brought "after ten years from the date of substantial completion of such improvement[.]" Section 37-1-27 defines the "date of substantial completion" to mean: (1) "the date when construction is sufficiently completed so that the owner can occupy or use the improvement for the purpose for which it was intended"; (2) "the date on which the owner does so occupy or use the improvement"; or (3) "the date established by the contractor as the date of substantial completion, whichever date occurs last."

**{14}** Plaintiffs argue that the date of "substantial completion" is 2004 under the second alternative, when the McGills purchased the home, because that is when the home was "occupied" and used for the purposes for which it was intended. On the other hand, Vista contends that the date of "substantial completion" is February 26, 2002, when the City issued Vista the Certificate of Completion and Acceptance under the first alternative, because that is when Vista was able to "use" the improvements for their intended purpose: sell the lots to builders.

**{15}** Plaintiffs' argument overlooks the fact that there may be many different "physical

5

improvements" made to a parcel of real property by many different persons or entities. By way of example, a subdivision may require the installation of paved streets, gutters, sidewalks, curbs, water service, gas service, and electrical service, among others. Nothing about Section 37-1-27 requires that all such improvements be installed by the same person or entity or at the same time. In fact, Section 37-1-27 refers to "any person performing or furnishing the construction or the design, planning, supervision, inspection, or administration of construction of such improvement to real property," which recognizes that there may be many ways and different persons who may make a "physical improvement" to real property that falls under its protection. Here, the only "physical improvements" Vista made to the property were the infrastructure improvements. The house is a "physical improvement" that is separate and apart from the infrastructure improvements, and it is not a "physical improvement" that Vista constructed. So, when the house was "occupied" is not relevant to determining whether Section 37-1-27 bars Plaintiffs' lawsuit against Vista.

**{16}** Vista's argument is more persuasive. In order to develop the subdivision, Vista was legally required to enter into an agreement with the City to install and construct specified infrastructure improvements "to the satisfaction of the City." Vista entered into an agreement and made the infrastructure improvements specified in the agreement. The City subsequently certified that the work was constructed in compliance with the agreement, and accepted the work on February 26, 2002. While the record before us does not demonstrate when the infrastructure improvements specific to Lot 17 were completed, the City's certificate sets forth the latest date on which those improvements were substantially completed, because the certificate would not have been issued if those improvements had failed to comply with the City's requirements. We therefore conclude that the City's issuance of its certificate in this case is sufficient to serve as prima facie evidence of substantial completion of the infrastructure improvements. *See Rosso v. Hallmark Homes of Minneapolis, Inc.*, 843 N.W.2d 798, 802 (Minn. Ct. App. 2014) ("While a certificate of occupancy may serve as prima facie evidence of substantial completion because a certificate of occupancy would never be issued before a structure's construction were completed, it is not a necessary condition that has to occur before substantial completion of a home is achieved[.]" (emphasis omitted)). The City issued its certificate to Vista on February 26, 2002, and Plaintiffs' complaint against Vista was filed on December 7, 2012, more than ten years later. Plaintiffs' claims against Vista are therefore extinguished by Section 37-1-27. *See Cummings*, 1996-NMSC-035, ¶ 50 (explaining that a statute of repose "terminates" a cause of action upon the passage of the prescribed period of time).

**{17}** Although the conclusion we reach is based upon our interpretation of Section 37-1-27, in their briefing, both Plaintiffs and Vista discuss the potential application of *Jacobo v. City of Albuquerque*, 2005-NMCA-105, 138 N.M. 184, 118 P.3d 189, to the facts of this case. *Jacobo* involved interpretation of our statute of repose under circumstances in which the defendants were the builders and continuous owners of the improved property. *Id.* ¶ 12 ("[W]e hold that Section 37-1-27 does not protect owners of property who built the property against claims arising from unsafe conditions of that property[.]"). In the present case, Vista was not a continuous owner, having sold Lot 17 to Stillbrooke on July 25, 2003. *Jacobo* is

6

thus inapplicable to this case.

### III.    CONCLUSION

**{18}**    The order of the district court granting summary judgment to Vista is affirmed.

**{19}    IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Chief Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**M. MONICA ZAMORA, Judge**