**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: September 17, 2014

Docket No. 32,988

DEBORAH BROWN, Individually and
on Behalf of Her Minor Children, H.B
and B.S.,

       Plaintiff-Appellant,

v.

ROBERT KELLOGG, M.D.,
ROBERT OLSEN, M.D., and
PRESBYTERIAN HEALTHCARE
SERVICES d/b/a KASEMAN
PRESBYTERIAN HOSPITAL,

       Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Valerie A. Huling, District Judge**

Law Offices of James P. Lyle, P.C.
James P. Lyle
Albuquerque, NM

for Appellant

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Jeffrey M. Croasdell
Shannon M. Sherrell
Edward Ricco
Albuquerque, NM

for Appellees

**OPINION**

**GARCIA, Judge.**

1

**{1}** Plaintiff, Deborah Brown, appeals from the district court's grant of summary judgment in favor of Defendants, Robert Kellogg, M.D., Robert Olsen, M.D., and Presbyterian Healthcare Services d/b/a Kaseman Presbyterian Hospital. Plaintiff contends the district court erred in failing to recognize that Defendants had a legal duty to order that Plaintiff's husband, Jeremy Brown, undergo a fitness for duty evaluation before releasing him to return to work as a police officer. We agree with the district court that Defendants did not have a legal duty to order a fitness for duty evaluation. We affirm.

## BACKGROUND

**{2}** Jeremy Brown was a detective with the Pueblo of Laguna Police Department. On May 17, 2007, Brown presented himself to the emergency room with thoughts of suicide stemming from the breakup of his marriage. Brown was found to exhibit "[n]o current . . . psychosis" and was discharged after a few hours. Brown returned to the emergency room on May 21, 2007, and was admitted to the hospital "in order to evaluate [his] dangerousness in view of expressed suicidal ideation and to evaluate for depression."

**{3}** On May 23, 2007, Brown was discharged from the hospital with a diagnosis of depression and adjustment reaction with anxiety and depression. The follow-up plan provided for individual therapy and for Brown to contact a psychologist at work. Brown received medical authorization from his doctors to return to work without restriction on May 26, 2007. A fitness for duty examination was not performed on Brown before he received authorization to return to work. On June 8, 2007, Brown used his service weapon to shoot Plaintiff and kill himself. Plaintiff suffered permanent brain injuries as a result of the shooting and lost custody of her minor children.

**{4}** Plaintiff, individually and on behalf of her minor children, filed a complaint against Defendants on May 14, 2010, asserting a claim for medical malpractice. Defendants filed a motion to dismiss that was denied by the district court. Defendants next filed a motion for summary judgment, arguing that they did not owe a duty to Plaintiff as a matter of law. Following a hearing, the district court granted Defendants' motion and entered summary judgment in favor of Defendants. Plaintiff appeals from this order granting summary judgment.

## DISCUSSION

**{5}** We review the district court's grant of summary judgment de novo. *See Farmington Police Officers Ass'n v. City of Farmington*, 2006-NMCA-077, ¶ 13, 139 N.M. 750, 137 P.3d 1204. Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 1-056(C) NMRA.

**{6}** "To prove medical malpractice, a plaintiff must show that (1) the defendant owed the

2

plaintiff a duty recognized by law; (2) the defendant breached the duty by departing from the proper standard of medical practice recognized in the community; and (3) the acts or omissions complained of proximately caused the plaintiff's injuries." *Diaz v. Feil*, 1994-NMCA-108, ¶ 5, 118 N.M. 385, 881 P.2d 745. The district court concluded that Defendants did not owe a duty to Plaintiff as a matter of law. Plaintiff contends the district court erred in failing to recognize that Defendants had a duty to order a fitness for duty evaluation for Brown before authorizing him to return to work as a police officer with access to a service weapon.

**{7}** In *Wilschinsky v. Medina*, our Supreme Court explained that "[t]he finding of a duty involves the court in a careful balancing." 1989-NMSC-047, ¶ 7, 108 N.M. 511, 775 P.2d 713. In determining whether to recognize a duty, the court "must take into account the likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant." *Id.* (internal quotation marks and citation omitted). Our Supreme Court has recently clarified that "foreseeability is not a factor for courts to consider when determining the existence of a duty . . . [because it] is a fact-intensive inquiry relevant only to breach of duty and legal cause considerations." *Rodriguez v. Del Sol Shopping Ctr. Assoc.*, 2014-NMSC-014, ¶ 1, 326 P.3d 465. "Instead, courts must articulate specific policy reasons, unrelated to foreseeability considerations, when deciding whether a defendant does or does not have a duty or that an existing duty should be limited." *Id.* ¶ 25. We thus undertake an analysis of the policy considerations and interests involved without regard to whether the injury sustained by Plaintiff was foreseeable. Unfortunately, the district court addressed the issue of whether Defendants owed Plaintiff a duty to require Brown to undergo a fitness for duty evaluation prior to the issuance of the Supreme Court's ruling in *Rodriguez*. As a result, neither party developed a significant record addressing the policy-based considerations to be weighed by the district court. This Court's analysis of Defendant's duty to Plaintiff is reflective of the limited record that was developed in the district court.

**{8}** Our courts have recognized three sources of duty for medical professionals to third parties. *See Wilschinsky*, 1989-NMSC-047, ¶ 8. In the first instance, a doctor or institution can potentially be liable for injury caused by patients with known "dangerous propensities" if the doctor exerts control over the patient. *See id.*; *see e.g.*, *Kelly v. Bd. of Trustees of Hillcrest Gen. Hosp. Inc.*, 1974-NMCA-139, ¶¶ 5-7, 87 N.M. 112, 529 P.3d 1233 (holding summary judgment was improperly entered in favor of the defendant because the defendant failed to make a prima facie showing that it did not have actual knowledge of patient's "dangerous propensities"); *see also Stake v. Woman's Div. of Christian Serv.*, 1963-NMSC-221, ¶¶ 4-5, 73 N.M. 303, 387 P.2d 871 (recognizing the potential duty to warn of patient's "dangerous propensities" when the defendant has actual knowledge of such propensities). In the second instance, a doctor who is aware of specific threats to the life of an individual can potentially be liable for failing to disclose those threats to the authorities or to the person threatened. *See Wilschinsky*, 1989-NMSC-047, ¶ 9 (discussing *Tarasoff v. Regents of Univ. of Cal.*, 551 P.2d 334 (Cal. 1976)). In the third instance, a doctor who administers powerful drugs in his office that result in impairment to a patient can potentially be liable to those

3

injured by the impaired patient. *Wilschinsky,* 1989-NMSC-047, ¶¶ 11, 28.

**{9}** Plaintiff does not suggest that the duty it seeks to impose on Defendants falls within any of the three categories identified in *Wilschinsky.* Instead, Plaintiff argues that under *Wilschinsky,* a duty exists based upon a factual analysis of 1) foreseeability—a likelihood of injury to the plaintiff, and 2) the burden placed upon a defendant—the magnitude of the burden on a defendant and the consequences of doing so. *See id* ¶ 9. Plaintiff bases her argument on a consideration of "the uniquely dangerous perspective posed by law enforcement officers who are trained in all aspects of lethal force, combined with the well known need among mental [healthcare] professionals to order a fitness for duty evaluation under these [factual] circumstances." Effectively, Plaintiff argues that this Court should impose a new, more focused duty to order a fitness for duty evaluation on independent healthcare professionals who treat individuals with access to firearms as part of their workplace environment. Plaintiff cites to neither New Mexico nor outside authority that would impose such a duty on independent healthcare professionals. The only fitness for duty examination requirement identified and recognized under existing law would apply to certain federal law enforcement agencies.[1] Even under the federal regulation referenced by Plaintiff, it is the discretionary function of the federal agency, as employer, to consider imposing a psychiatric evaluation on a federal employee. *Id.* Plaintiff does not even assert that such a duty is imposed upon Brown's employer in this case. In addition, Plaintiff does not dispute that a fitness for duty evaluation is not imposed on public agencies in New Mexico and is not required by independent healthcare professionals pursuant to existing law. Finally, Plaintiff's fact-based analysis of foreseeability is inconsistent with the policy-based analysis required under *Rodriguez.* 2014-NMSC-014, ¶¶ 1, 25.

**{10}** Based upon the record presented in this case, there appear to be good policy reasons for rejecting the imposition of a fitness for duty legal obligation on independent healthcare professionals who treat individuals with access to firearms as part of their workplace environment. It appears from the testimony of Plaintiff's own expert, Peter DiVasto, a fitness for duty evaluation is a complex evaluation that "takes about two weeks to complete." DiVasto also testified that he has never been in a situation where a hospital has ordered a fitness for duty evaluation. It is unclear who would conduct the evaluation, who would pay for the evaluation, and how the outcome of the evaluation would affect a patient's medical care and workplace limitations. It is also unclear what negative effects a fitness for duty evaluation requirement on independent healthcare professionals would have on law

---

[1] Plaintiff cites to a portion of the Office of Personnel Management regulations setting forth the circumstances under which a federal agency has discretion to order a psychiatric examination. *See* 5 C.F.R. § 339.301(e)(1) (2014). However these regulations involve the federal agency as an employer, do not address the specific situation involving independent healthcare professionals presented in the present case, and do not place a duty on any healthcare professional to order or compel a fitness for duty evaluation upon a patient.

enforcement personnel and their desire to seek medical assistance.

**{11}** We do not believe it is appropriate for this Court to impose an entirely new and novel legal duty upon healthcare professionals without an extensive development of the policy considerations in the record for review. A balancing of the various policy interests presented in this case does not clearly support the imposition of such a new duty. These are the types of policy considerations that should be publicly addressed as part of the legislative process if a fitness for duty evaluation is to be imposed as a new duty upon healthcare professionals. We find the following Supreme Court language to be particularly instructive:

> Policy determines duty. With deference always to constitutional principles, it is the particular domain of the [L]egislature, as the voice of the people, to make public policy. Elected executive officials and executive agencies also make policy, to a lesser extent, as authorized by the constitution or the [L]egislature. The judiciary, however, is not as directly and politically responsible to the people as are the legislative and executive branches of government.

*Torres v. State*, 1995-NMSC-025, ¶ 10, 119 N.M. 609, 894 P.2d 386.

**{12}** DiVasto testified at his deposition that he believed Defendants' responsibility was to provide Brown with an outpatient appointment upon discharge, and Defendants satisfied that responsibility. Brown's follow-up plan also required him to contact a psychologist at work. The Legislature and our courts have not imposed any additional duty upon healthcare professionals regarding their patients with jobs that involve carrying firearms as part of their workplace functions. In addition, this Court is not aware of any other jurisdiction that has recognized a duty on the part of a healthcare professional to order a fitness for duty evaluation under similar circumstances. *See* 5 C.F.R. § 339.301(e)(1). The duty imposed upon federal law enforcement agencies would be evaluated under a different and distinct set of policy considerations focusing upon employment and workplace considerations. The relationship between a healthcare professional and a patient is uniquely different, necessitating policy considerations that focus on the medical circumstances present. We agree with the district court that Defendants did not have a legal duty to order Brown to undergo a fitness for duty evaluation before releasing him from the hospital and later authorizing him to return to the workplace as a police officer pursuant to the specific requirements set forth in his medical follow-up plan.

**CONCLUSION**

**{13}** For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Defendants.

**{14}** **IT IS SO ORDERED.**

5

                                     _____

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

**RODERICK T. KENNEDY, Chief Judge**

_____

**JAMES J. WECHSLER, Judge**