The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:_____

Filing Date: December 23, 2025

**No. A-1-CA-42154**

**JOHN KEMP,**

Plaintiff-Appellant,

v.

**JJJ PAINTING, JOSE SOSA,**
**and JOSE ALLEN SOSA,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Casey Fitch, District Court Judge**

Salcedo & Company, LLC
Isidro Salcedo
Gilberto Gomez
Las Cruces, NM

for Appellant

Ramon Hernandez Law LLC
Ramon Hernandez
Las Cruces, NM

for Appellees

# OPINION

**HENRY M. BOHNHOFF, Judge, Retired, Sitting by Designation.**

{1}     Plaintiff John Kemp filed this action to cancel mechanic's liens that Defendant JJJ Painting, a sole proprietorship owned by Defendant Jose Sosa (Jose), filed to enforce its right to payment for painting, drywall, and stucco work it had performed on homes being built on Kemp's land. The district court ruled that Jose's son, Defendant Jose Allen Sosa (Allen), who managed the business, was an employee of JJJ Painting, qualified as a "individual who works only for wages" (hereinafter "wage earner") under NMSA 1978, Section 60-13-3(D)(13) (1999) of the Construction Industries Licensing Act (CILA or Act), NMSA 1978, §§ 60-13-1 to -59 (1967, as amended through 2021), and therefore was individually exempt from the Act's licensing requirement. The district court also determined that subcontractors who performed drywall and stucco work for JJJ Painting were neither licensed contractors nor JJJ Painting employees, and JJJ Painting therefore was barred from enforcing its rights to compensation for those individuals' work. However, the district court ruled that this infirmity did not bar JJJ Painting from otherwise enforcing the liens and collecting compensation for its own employees' work on the homes. Kemp appeals the district court's judgment embodying these rulings and awarding JJJ Painting damages. We affirm.

## BACKGROUND

{2}     As its name implies, CILA governs the licensing of construction contractors, including the consequences of violating the Act's requirements. Section 60-13-12(A) provides that "[n]o person shall act as a contractor without a license issued by the [New Mexico Construction Industries D]ivision [(CID)] classified to cover the type of work to be undertaken." *See* § 60-13-2(A) (defining CID). Sections 60-13-30(A) and (B) generally bar an unlicensed contractor from taking legal steps to enforce a right to compensation for contracting:

> A.     No contractor shall . . . bring or maintain any action in any court of the state for the collection of compensation for the performance of any act for which a license is required by [CILA] without alleging and proving that such contractor was a duly licensed contractor at the time the alleged cause of action arose.

> B.     Any contractor operating without a license as required by [CILA] shall have no right to file or claim any mechanic's lien as now provided by law.

{3}     The Act defines "contractor" generally to include anyone who undertakes contracting, § 60-13-3(A), and specifically to include a subcontractor and a specialty contractor, § 60-13-3(B). The Act defines "contracting" to include "constructing, altering, repairing, installing or demolishing" any building or structure. Section 60-13-3(A)(2). Section 60-13-3(D)(13), however, exempts from the definition of contractor "an individual who works only for wages," and Section 60-13-2(I) defines

2

"wages" as "compensation paid to an individual by an employer from which taxes are required to be withheld by federal and state law."

**Factual Background**

{4}     The district court made the following findings of fact which, as discussed below, are unchallenged on appeal.

{5}     Jose is a painting contractor in Las Cruces, New Mexico, doing business as JJJ Painting. Jose holds a GB-98[1] contracting license issued by the CID, and is the qualifying party, *see* 14.6.3.8(A)(3)(a), (E) NMAC, for a GB-98 license that was issued to JJJ Painting at the same time.

{6}     Jose's son, Allen, is an employee of JJJ Painting. Allen had significant responsibility and discretion in running JJJ Painting, as would be typical of a manager of a business. Notwithstanding Allen's managerial role in JJJ Painting, Jose retained control of the company and had to approve all substantial decisions. Allen also engaged in work that constituted contracting within the meaning of Section 60-13-3(A)(2). Allen does not hold a contractor's license. Addressing testimony that Allen's compensation was based on the company's profits, the district court found

---

[1]A GB-98 license generally authorizes the holder to "[e]rect, alter, repair or demolish residential and commercial buildings." 14.6.6.9(B)(2) NMAC. It includes work authorized by GS classifications such as the GS-7 (defining drywall classification) and GS-30 (defining plastering, stucco and lathing classifications) specialty licenses, *see id.*;14.6.6.9(D)(5), (16) NMAC, but does not include certain other specialties and other categories of contracting work. *See generally* 14.6.6.8 NMAC and 14.6.6.9 NMAC.

that no credible testimony was presented that the compensation would not be subject to withholding of taxes just as profit-based bonuses are subject to withholding.

{7}     Kemp is a real estate investor. In partnership with Atlas Group, LLC, a construction company owned by Cecil Campbell, Kemp built homes in Las Cruces. Campbell engaged JJJ Painting in 2020 to paint homes that Campbell and Kemp were building. The parties did not utilize written contracts, but JJJ Painting would submit an invoice after assigned work was completed.

{8}     JJJ Painting's business relationship with Atlas fell apart in 2022 as a result of work that JJJ Painting performed on homes Atlas was building at 2837 and 2845 East Springs Road in Las Cruces. At 2837 East Springs Road, Atlas had asked JJJ Painting to repaint the interior of the house because, due to problems with earlier work by a drywall contractor, the drywall tape seams showed through the coats of paint. JJJ Painting's initial repainting effort did not solve the problem—the seams started to show again once the paint dried—so Atlas asked JJJ Painting to come back, this time to first redo the work of the drywall contractor ("re-embed[]" and "textur[e]" the tape seams) and then repaint the house a second time. JJJ Painting employees performed the painting work, but Allen hired a cousin, Cesar De la Rosa, to handle the drywall task, because De la Rosa had drywall experience. JJJ Painting paid De la Rosa $1,800 and then charged Atlas $2,000 for this work. The invoices reflect that JJJ Painting charged $1,800 in Invoice No. 303 for the first repainting

4

effort, and then included the $2,000 drywall repair charge plus an additional $3,900 for the second repainting effort in Invoice No. 302.

{9}     Campbell also had asked JJJ Painting to perform the stucco work at both 2837 and 2845 East Springs Road. Allen engaged Juan Viegas, who had his own employees, to work with him on this task. JJJ Painting charged Atlas $15,456 (Invoice No. S-202) and $14,644 (Invoice No. S-217) for stuccoing 2837 and 2845 East Springs Road. Like De la Rosa, JJJ Painting paid Viegas a portion of what JJJ Painting billed Atlas.

{10}     Eventually, Campbell instructed JJJ Painting to stop working on all Atlas homes and terminated the business relationship. Following the termination, Atlas did not pay JJJ Painting for the balance of the painting, drywall, and stucco work on 2837 and 2845 East Springs Road that remained unpaid. Specifically, in addition to not paying for any of the repainting and drywall work on 2837 East Springs Road as reflected on Invoice Nos. 303 and 302, Atlas did not pay $6,182.40 and $5,587.60 balances that remained due for the stucco work on the two homes as reflected on Invoice Nos. S-202 and S-217. While the parties disputed the reasons for the termination, the district court found that JJJ Painting had completed the invoiced work and that Campbell's other dissatisfaction with JJJ Painting was not a basis for denying payment.

{11} The district court determined that neither Viegas nor De la Rosa was a JJJ Painting employee, Viegas did not have a contractor's license, and JJJ Painting had not established that De la Rosa was licensed.

**Procedural Background**.

{12} Following Campbell's stop-work order, JJJ Painting recorded mechanic's liens against 2837 and 2845 East Springs with the Doña Ana County Clerk. Kemp, the record owner of the two parcels, responded by initiating this action to cancel the liens, as provided for by NMSA 1978, Section 48-2-9 (2007).

{13} Kemp's grounds for challenging JJJ Painting's liens evolved as the case progressed. In his petition and at the beginning of the trial, Kemp contended that Allen effectively had taken over the management and operation of JJJ Painting; further, Allen was not paid an hourly wage, but rather a portion of the company's profits. Kemp urged that, for these reasons, Allen was a contractor as that term is defined in Section 60-13-3(A), and the four invoices therefore were unenforceable.

{14} After a day and a half of trial, the district court rejected this argument. The district court reasoned that, under Sections 60-13-2(I) and -3(D)(13), a wage earner is exempt from the contractor licensing requirement; wage earner status hinges on whether the compensation the person receives from the contractor is subject to withholding under federal and state tax laws; and, even though it was based on JJJ Painting's profits, Allen's compensation was still subject to withholding. However,

6

the court also ruled that De la Rosa and Viegas were acting as subcontractors and not employees; unless they were licensed for drywall and stucco work, respectively, Section 60-13-30 would bar JJJ Painting from collecting compensation for any work by them.

{15}     The remainder of the trial focused on what work reflected in Invoice Nos. 303, 302, S-202, and S-217 was performed by Allen and other JJJ Painting employees as opposed to De la Rosa and Viegas, and whether those two individuals held contractor licenses. Kemp now argued not only that De la Rosa and Viegas were not licensed and thus payments to them were not recoverable, but also that this partial invalidity operated to bar JJJ Painting from recovering for its own employees' work as well.

{16}     Following conclusion of the second part of the trial, the district court ruled that JJJ Painting had failed to establish that De la Rosa and Viegas were either JJJ Painting employees or alternatively licensed contractors, and thus JJJ Painting could not recover for their work. However, the district court rejected Kemp's contention that this partial invalidity of Invoice Nos. 302, S-202, and S-217 barred JJJ Painting from recovering the portion of the invoice amounts that reflected its own employees' work. On this basis, the district court ruled as follows: First, it did not find invalid any portion of the $1,800 billed to Kemp in Invoice No. 303 for repainting work performed by JJJ Painting employees. Second, it disallowed the $2,000 that JJJ Painting had itemized for De la Rosa's drywall work out of the total $5,900 bill to

7

Kemp in Invoice No. 302. Third, it allocated to Viegas's labor and thus invalidated $4,636.80 (amounting to 75 percent) out of the total $6,182.40 unpaid amount for stucco work in Invoice S-202 (i.e., JJJ Painting was entitled to recover $1,545.60). Fourth, similarly, it allocated to Viegas's labor and thus invalidated $4,393.20 (amounting to 75 percent) out of the total $5,857.60 unpaid amount for stucco work in Invoice No. S-217 (i.e., JJJ Painting was entitled to recover $1,464.40). The district court accordingly entered final judgment on July 16, 2024, in favor of JJJ Painting and against Kemp in the amount of $8,710 ($1,800 (Invoice No. 303) + $3,900 (Invoice No. 302) + $1,545.60 (Invoice No. S-202) + $1,464.40 (Invoice No. S-217)).

**DISCUSSION**

{17}     On appeal, Kemp reiterates his two principal arguments. First, the district court erred in determining that Allen fell within the wage-earner exemption to CILA's licensing requirement. Second, the district court erred in allowing JJJ Painting to obtain partial recovery on what Kemp characterizes as a "mixed contract," i.e., a contract that involves work by both an unlicensed subcontractor and the licensed contractor (and its employees and/or licensed subcontractors). Kemp additionally argues that, if recovery is allowed at all on a mixed contract, it should be limited to instances where (1) the contractor acted in good faith; and (2) the

licensed and unlicensed work can be separated, neither of which requirements, he maintains, JJJ Painting can satisfy.

{18} Before beginning our analysis, we note that neither Kemp nor the Defendants challenge any of the district court's findings of fact. In particular, while Kemp challenges a contractor's right to collect any compensation for work on a partially invalid contract, he does not dispute the district court's determination that JJJ Painting performed the work that Atlas had assigned to it, and the court's allocation of the invoice amounts to JJJ Painting's employees' work versus the work of De la Rosa and Viegas. Similarly, JJJ Painting has not cross-appealed, and otherwise does not challenge in its answer brief, the district court's ruling that JJJ Painting failed to establish that De la Rosa and Viegas were either JJJ Painting employees or alternatively licensed contractors and thus JJJ Painting could not recover for their work.[2] Accordingly, we accept the district court's factual findings for purposes of our analysis. *See Martinez v. Sw. Landfills, Inc.*, 1993-NMCA-020, ¶ 18, 115 N.M.

---

[2]After completion of appellate briefing, on June 17, 2025, JJJ Painting filed in the district court a motion pursuant to Rule 1-060(B) NMRA for relief from the July 16, 2024 judgment. In the motion, JJJ Painting sought to present new evidence that Viegas in fact was licensed as a contractor. Following the district court's apparent oral denial of the motion on the grounds that the current appeal divested it of jurisdiction, JJJ Painting filed a motion with this Court seeking a limited remand "to permit the district court to hear and adjudicate" the Rule 1-060(B) motion. Rather than delay the disposition of this appeal, we will deny that motion. Following entry of our mandate, JJJ Painting may pursue its motion with the district court, on the merits of which we take no position.

181, 848 P.2d 1108 ("[A]n appellant is bound by the findings of fact made below unless the appellant properly attacks the findings," which requires "properly set[ting] forth all [of] the evidence bearing upon the findings.").

## I. Standard of Review

{19} In the absence of any challenge to the district court's fact findings, resolution of Kemp's arguments requires either construction of CILA or application of the statute to those findings. "The meaning of language used in a statute is a question of law that we review de novo." *Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61. "[W]e review de novo a lower court['s] . . . application of law to facts." *TPL, Inc. v. N.M. Tax'n & Revenue Dep't*, 2003-NMSC-007, ¶ 10, 133 N.M. 447, 64 P.3d 474.

## II. Allen Was an "Individual Who Works Only for Wages" Within the Meaning of CILA Section 60-13-3(D)(13)

{20} On the basis of its factual findings set forth above, the district court concluded that Sections 60-13-2(I) and -3(D)(13) exempted Allen from classification as a contractor: he performed contracting but, because his compensation for that work was subject to federal and state tax withholding, he was a wage earner and thus exempt from CILA's licensing requirement. The crux of Kemp's first argument on appeal, that the district court erred in concluding that Allen was a wage earner, rests on the proposition that Allen's compensation amounted to profit sharing, and such compensation is not subject to withholding.

## A. *Reule Sun Corp. v. Valles*

{21} Because it addressed and construed Sections 60-13-2(I) and -3(D)(13), *Reule Sun Corp. v. Valles*, 2010-NMSC-004, 147 N.M. 512, 226 P.3d 611, is the starting point in our analysis. In that case, homeowners had engaged a licensed contractor to apply stucco to their home. *Id.* ¶ 1. To handle the job, the contractor hired an individual, Perez, who was not licensed to perform stucco work. *Id.* ¶ 2. The homeowners were dissatisfied with the work and refused to pay the contract amount. *Id.* ¶ 3. The contractor filed a claim of lien, followed by a complaint for damages for breach of contract and to foreclose on the lien. *Id.* The homeowners defended in part on the basis that, because Perez did not have a contractor's license, the lien and lawsuit were barred by Section 60-13-30(A). *See id.* ¶¶ 9-12. Following a trial, the district court determined that Perez was under the contractor's complete direction and control, and therefore he did not need to be licensed. *Id.* ¶ 4. On appeal, this Court found that substantial evidence supported the trial court's determination that Perez was an employee and not an independent contractor, and otherwise affirmed. *Reule Sun Corp. v. Valles*, 2008-NMCA-115, ¶¶ 11-20, 31, 144 N.M. 736, 191 P.3d 1197, *rev'd* 2010-NMSC-004, ¶ 43.

{22} Our Supreme Court reversed. The Court determined first that Perez's work in applying stucco to the homeowners house constituted "contracting" within the meaning of CILA Section 60-13-3(A)(2). *Valles*, 2010-NMSC-004, ¶ 16. Thus, the

11

only question was whether Perez qualified under one of the exemptions listed in Section 60-13-3(D). *Valles*, 2010-NMSC-004, ¶ 17.

{23} The Court next addressed whether Perez qualified for the wage earner exemption under Section 60-13-3(D)(13). *Valles*, 2010-NMSC-004, ¶ 18. Notwithstanding substantial evidence catalogued by this Court to the effect that Reule Sun Corp. exercised control over Perez's work and otherwise supporting the district court's determination that the contractor's relationship with Perez was that of an employer to an employee, *see Valles*, 2008-NMCA-115, ¶¶ 7, 14-16, our Supreme Court noted that the contractor had testified that Perez paid his own taxes and he did not treat Perez as an employee *for tax purposes*. *Valles*, 2010-NMSC-004, ¶¶ 2, 11. On the basis of this testimony, and reading Section 60-13-3(D)(13) in conjunction with the definition of "wages" in Section 60-13-2(I), our Supreme Court concluded that Perez did not qualify under the wage-earner exception to the definition of contractor, and therefore he was required to have a contractor's license. *Valles*, 2010-NMSC-004, ¶ 18.

{24} The Court also addressed whether the common law "control" test for distinguishing between an employee and an independent contractor was material to determining a person's status as a contractor or subcontractor for licensing purposes under CILA. *Id.* ¶¶ 19-29. Earlier Supreme Court precedent had held that a person who by the nature of their work otherwise would fall within the statutory definition

12

of contractor was exempt from CILA's licensing requirement if they qualified as an employee under the common law control test:

> [T]he findings make it sufficiently plain that Latta [the plaintiff worker] was an employee, and not an independent contractor. At all times, the right of control of the performance of the work and the right to direct the manner in which the work would be done was in Bokum [the defendant owner].
>
> . . . .
>
> [T]he lower court having concluded that Latta was an employee, . . . we find that Latta is not barred from maintaining this action.

*Latta v. Harvey*, 1960-NMSC-046, ¶¶ 7, 10, 67 N.M. 72, 352 P.2d 649; *accord Campbell v. Smith*, 1961-NMSC-059, ¶¶ 11, 14, 68 N.M. 373, 362 P.2d 523. The *Valles* Court overruled this precedent, reasoning that it effectively established an "employee" exception to CILA's licensing requirement that was broader than Section 60-13-3(D)(13)'s "wage earner" exception. *Valles*, 2010-NMSC-004, ¶¶ 27-29.[3] Thus, as a matter of New Mexico law, evidence of control over the putative employee's performance of assigned work is not material to determining wage earner status under Section 60-13-3(D)(13).

---

[3]The Court also rejected Reule Sun Corp.'s related argument that Section 60-13-3.1 adopted the common law control test as an exception to the contractor licensing requirement: notwithstanding its codification as part of CILA, the statute was enacted separately and is applicable to unfair labor practices, not contractor licensing. *See Valles*, 2010-NMSC-004, ¶¶ 30-34.

**B.     Profit-Based Compensation**

{25}     Profit-based compensation of employees, which as the district court noted is not uncommon in professional firms and elsewhere, is subject to tax withholding. Federal tax law broadly includes "all remuneration . . . for services performed by an employee for [their] employer" within the ambit of "wages" subject to income taxation, I.R.C. § 3401(a), and then requires employers to withhold income taxes from such wages, *see* I.R.C. § 3402(a)(1); *see also* I.R.C. § 3121(a) (defining "wages" for purposes of social security taxation as "all remuneration for employment"); 26 C.F.R. § 31.3401(a)-1(3) (stating that "[t]he basis upon which the remuneration is paid is immaterial in determining whether the remuneration constitutes wages. Thus, it may be paid on the basis of piecework, *or a percentage of profits*; and may be paid hourly, daily, weekly, monthly, or annually" (emphasis added)); 26 C.F.R. § 31.3121(a)-1(d) (same). New Mexico law, in turn, requires employers to withhold state income taxes from an employee's wages if withholding of federal taxes is required under federal law. *See* NMSA 1978, § 7-3-3(A) (1996); *see also* NMSA 1978, § 7-3-2(J) (2002) (defining "wages," for purposes of Section 7-3-3(A), as "remuneration . . . for services performed by an employee for an employer"). Thus, profit-based compensation such as that which Allen received could constitute "wages" within the meaning of Section 60-13-3(D)(13)'s exemption.

14

{26} In the case at bar, the parties on appeal have not cited any testimony or documentary evidence introduced at trial bearing on whether Jose d/b/a JJJ Painting treated Allen as an employee or an independent contractor *for tax purposes*. Further, Kemp did not argue to the district court, nor does he argue on appeal, that under Section 60-13-30(A) JJJ Painting failed to meet any burden of proving Allen's status as a wage earner. We therefore decline to consider the question here. *See N.M. Dep't of Hum. Servs. v. Tapia*, 1982-NMSC-033, ¶ 11, 97 N.M. 632, 642 P.2d 1091 (stating that courts should not address legal questions not raised by the parties and their counsel); *State ex rel. Hum. Servs. Dep't v. Staples* (*In re Doe*), 1982-NMSC-099, ¶¶ 3, 5, 98 N.M. 540, 650 P.2d 824 (same); *see also Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed."). Because the argument that Kemp does advance—that profit-based compensation is not subject to withholding under federal and state tax law—lacks merit, we affirm the district court's conclusion that Sections 60-13-2(I) and -3(D)(13) operated to exempt Allen from classification as a contractor.[4]

---

[4]Kemp also argues that, as a sole proprietorship, JJJ Painting does not file a separate tax return, and thus is a "disregarded entity" or a "pass-through entity" under federal and state tax law. The point is irrelevant. Even if JJJ Painting does not file a separate income tax return, and instead the business's net income is included in Jose's personal tax return, as we have explained, compensation paid to JJJ Painting employees, including Allen, could still be considered "wages" for tax purposes.

**III. CILA Section 60-13-30(A) Did Not Bar JJJ Painting From Collecting Compensation for Its Own Work, Even Though It Was Barred From Collecting for the Work of De La Rosa and Viegas.**

{27} As stated, the district court determined that neither De la Rosa nor Viegas possessed, or was shown to possess, a license to perform drywall or stucco work, respectively, and neither was an employee of JJJ Painting. On the basis of these facts, the district court ruled that JJJ Painting could not recover $2,000 that JJJ Painting charged in Invoice No. 302 for the drywall work performed by De la Rosa, and $4,636.80 and $4,393.20 that it determined was the portion (amounting to 75 percent) of Invoices Nos. S-202 and S-217, respectively, attributable to Viegas's stucco work. However, the district court rejected Kemp's legal argument that, because JJJ Painting could not recover a portion of the amounts charged in these invoices, they were entirely invalid and unenforceable. Instead, the court awarded the remaining amounts charged in these three invoices, plus the $1,800 charged in Invoice No. 303, to JJJ Painting as damages for its painting work.

{28} Kemp acknowledges that no New Mexico court has directly addressed his argument. He argues, however, that recovery should be barred because (1) doing so will effectuate the legislative purpose that underlies CILA; and (2) allowing a licensed contractor to recover for its own work leads to an untenable situation—difficulty in sorting out the work of the licensed contractor versus the work of the subcontractor—in the event of litigation. Kemp further argues that, if a licensed

16

contractor is allowed to recover for its own work, New Mexico should require the contractor to satisfy the requirements of a "good faith" partial lien recovery rule that he maintains is the law in other states. For the following reasons, we are not persuaded that Section 60-13-30's sanction extends as far as Kemp urges. We therefore affirm the district court on this point.

## A.      Statutory Construction Rules

{29}      In *Valles*, our Supreme Court identified the following principles of statutory construction that informed its construction of CILA, in particular Section 60-13-30:

> The guiding principle of statutory construction is that a statute should be interpreted in a manner consistent with legislative intent, which is determined by looking not only to the language used in the statute, but also to the purpose to be achieved and the wrong to be remedied. We will give effect to the legislative intent by adopting a construction which will not render the statute's application absurd or unreasonable and will not lead to injustice or contradiction.
>
> Our statutory construction analysis begins by examining the words chosen by the Legislature and the plain meaning of those words. Under the plain meaning rule, when a statute's language is clear and unambiguous, we will give effect to the language and refrain from further statutory interpretation. We will not read into a statute language which is not there, especially when it makes sense as it is written. In addition to the plain meaning examination, we also consider the statutory subsection in reference to the statute as a whole and read the several sections together so that all parts are given effect. Finally, the practical implications, as well as the statute's object and purpose are considered.

*Valles*, 2010-NMSC-004, ¶¶ 14-15 (text only) (citation omitted); *see also Johnson v. Bd. of Educ. for Albuquerque Pub. Schs.*, 2025-NMSC-014, ¶ 9, 572 P.3d 904

17

(stating that "the plain language of the statute is our primary guide to legislative intent" (alteration, internal quotation marks, and citation omitted)); *Triple B Corp. v. Brown & Root, Inc.*, 1987-NMSC-058, ¶ 9, 106 N.M. 99, 739 P.2d 968 (stating that "we cannot look beyond the express language of Section 60-13-30," which clearly barred suit by an unlicensed contractor regardless of whether the work was "fully and satisfactorily performed").

**B.      Section 60-13-30(A)'s Plain Meaning**

{30}     To interpret Section 60-13-30(A), we look first to the words the Legislature used in the statute, as well as other provisions in CILA. As stated, Section 60-13-30(A) provides in pertinent part:

> No contractor shall . . . bring or maintain any action in any court of the state for the collection of compensation for the performance of any *act* for which a license is required by [CILA] without alleging and proving that such contractor was a duly licensed contractor at the time the alleged cause of action arose.

(Emphasis added.) This provision's prohibition is focused: it bars compensation for *acts*, i.e., work, for which a CID license is required. It does not prohibit more broadly, as Kemp argues, compensation for an entire contract or project on which an unlicensed contractor or subcontractor worked. We note that CILA Section 60-13-52(A) similarly imposes criminal misdemeanor sanctions only for acting in the capacity of a contractor without a license: again, the focus of the sanction is on a particular act, and imposed only on the offending unlicensed contractor. From the

18

plain language of these two provisions, we can infer that in enacting Section 60-13-30(A), the Legislature did not intend to bar a licensed contractor from recovering for its own work that it is licensed to perform.

**C.     CILA's Legislative Purpose**

{31}     The stated purpose of CILA is to "promote the general welfare of the people of New Mexico by providing for the protection of life and property by adopting and enforcing codes and standards for construction, alteration, install[ing], connection, demolition[,] and repair work."  Section 60-13-1.1. In *Mascarenas v. Jaramillo*, our Supreme Court elaborated on CILA's purpose:

> In determining legislative intent, we look not only to the language used in the statute, but also to the object sought to be accomplished and the wrong to be remedied. The object sought to be accomplished by [CILA] is a healthy, ordered market in which consumers may contract with competent, reliable construction contractors who have passed the scrutiny of a licensing division. The wrong to be remedied is the exploitation of the public by incompetent and unscrupulous contractors who are unable or unwilling to obtain a license. In effect, the wrongs to be remedied are circumstances which permit unlicensed contractors to flourish and profit at the expense of the public.

1991-NMSC-014, ¶ 14, 111 N.M. 410, 806 P.2d 59 (citations omitted); *see also Peck v. Ives*, 1972-NMSC-053, ¶ 23, 84 N.M. 62, 499 P.2d 684 (summarizing CILA's purpose as "protect[ing] the public from incompetent and irresponsible builders").

{32}     New Mexico courts recognize that Section 60-13-30 represents a conscious decision by our Legislature to "harshly penalize unlicensed contractors by denying

19

them access to the courts to collect compensation for work performed," *Koehler v. Donnelly*, 1992-NMSC-058, ¶ 6, 114 N.M. 363, 838 P.2d 980, and that the statute's penalties are consistent with the purpose of CILA. *Id.* ¶ 7. Where necessary and appropriate to "serve[] and advance[]" CILA's purposes, *Mascarenas*, 1991-NMSC-014, ¶ 16, our courts have not hesitated to strictly construe and apply Section 60-13-30. Thus, an unlicensed contractor will be denied recovery even if it has fully and satisfactorily performed the contracted work, *Triple B Corp.*, 1987-NMSC-058, ¶ 9, or the owner is aware that the contractor is unlicensed, *see Mascarenas*, 1991-NMSC-014, ¶ 16. In addition, unlicensed contractors may not assert a defense of unjust enrichment; on the contrary, the policy underlying CILA overrides the equitable considerations that disfavor unjust enrichment. *Triple B. Corp.*, 1987-NMSC-058, ¶ 8. Further, an unlicensed contractor not only will be denied recovery of contracted amounts that the owner has not paid, it will be required to disgorge amounts that the owner has previously paid. *See Mascarenas*, 1991-NMSC-014, ¶ 16.

{33}     Similarly, as discussed above, in *Valles*, our Supreme Court concluded that Section 60-13-30(A) operated to bar a licensed contractor from enforcing *its* right to compensation for its subcontractor's work, based on *the subcontractor's* unlicensed status. *Valles*, 2010-NMSC-004, ¶¶ 36-42. The Court acknowledged the contractor's argument that, under the plain meaning of the statute, which bars only an unlicensed

20

contractor or their agent from filing suit to collect compensation, the contractor's suit was not barred. *See id.* ¶¶ 36-37. However, given the legislative purpose of CILA—ensuring that persons who perform contracting meet the training and experience requirements for licensing, *see* § 60-13-1.1—the Court held that Section 60-13-30(A) "precludes a licensed contractor from bringing or maintaining an action to collect compensation for work performed by an unlicensed subcontractor." *Valles*, 2010-NMSC-004, ¶ 38. That construction was "aligned with the CILA's purpose." *Id.* ¶ 41.

{34}    New Mexico courts have not, however, construed CILA to harshly penalize contractors beyond CILA's plain meaning where doing so is not necessary to carry out the statute's purpose. In *Peck*, the plaintiff held a contractor's license that limited him to performing contracts valued at up to $50,000. 1972-NMSC-053, ¶ 4. The plaintiff agreed to build a house for the defendant. *Id.* ¶ 1. At the time of contracting, the parties had discussed a cost of $40,000-$45,000, but as a result of alterations requested by the defendant the finished cost exceeded $90,000. *Id.* ¶¶ 1-3. The defendant refused to pay that amount, and the plaintiff filed, and then sued to foreclose on a mechanic's lien. *Id.* ¶ 1. The trial court had granted summary judgment for the defendant based on plaintiff's failure to be properly licensed, but our Supreme Court reversed. *Id.* ¶ 1. Notwithstanding the contractor's technical violation of what is now codified as Section 60-13-30(A) in not being "a duly

21

licensed contractor at the time the alleged cause of action arose," *id.* ¶ 8 (internal quotation marks and citation omitted), the Court held that he substantially complied in that (1) he held a valid license at the time of contracting; and (2) following completion of the defendant's house he had renewed his license with a $100,000 limit. *Peck*, 1972-NMSC-53, ¶¶ 19-23. In explaining its decision, the Court wrote:

> The purpose of [CILA] is to protect the public from incompetent and irresponsible builders. This purpose should not be lost sight of. In view of the severity of the sanctions and the forfeitures which could be involved, we are reluctant to construe the statute more broadly than necessary for the achievement of its purpose. The statute should not be transformed into an unwarranted shield for the avoidance of a just obligation.

*Id.* ¶ 23 (internal quotation marks omitted). *Cf. Koehler*, 1992-NMSC-058, ¶¶ 11-15 (citing *Peck* and holding that contractor substantially complied with CILA where he had no notice of cancelation of his performance bond and contractor's license before entering into construction contract, but then after learning of the cancelations promptly took steps to satisfy CILA financial responsibility requirements and reinstate his license).

{35}    Read together, *Little v. Jacobs* (hereinafter *Jacobs*), 2014-NMCA-105, 336 P.3d 398, and *Little v. Baigas* (hereinafter *Baigas*), 2017-NMCA-027, 390 P.3d 201, illustrate the judicial balancing required to "serve and advance" CILA's purpose without transforming Section 60-13-30(A) into an "unwarranted shield for the avoidance of a just obligation." *See Peck*, 1972-NMSC-053, ¶ 23 (internal quotation

22

marks omitted). In *Jacobs*, a vacationing tenant renting a home in 2009 fell from a deck that had been built by an unlicensed contractor in 2000. 2014-NMCA-105, ¶ 2. The tenant initially sued the owner for his injuries in 2011, then in 2013 joined the builder after learning of the latter's identity. *Id.* The trial court initially dismissed the claims against the builder on the grounds that the claim was barred by NMSA 1978, Section 37-1-27 (1967), the ten-year statute of repose for actions based on defective or unsafe improvements to real property. *Jacobs*, 2014-NMCA-105, ¶ 4. In *Jacobs*, this Court reversed the dismissal, reasoning that extending the benefits of Section 37-1-27 to unlicensed contractors would conflict with the purpose of CILA. *See Jacobs*, 2014-NMCA-105, ¶¶ 1, 14-20. "Given our Legislature's position on unlicensed contracting, we cannot extend unlicensed contractors any semblance of legitimacy under the law. A statute that was enacted to shield those in the construction industry from liability after a certain point, requires that those protected by it be legitimately in that industry; i.e., be licensed." *Id.* ¶ 18.

{36}     Following remand, the district court granted summary judgment in favor of the defendant contractor on the alternative grounds that the claims against him were barred by the applicable statute of limitations, *see* NMSA 1978, § 37-1-8 (1976) (establishing a three-year statute of limitations for personal injury actions). *See Baigas*, 2017-NMCA-027, ¶ 5. On appeal in *Baigas*, this Court affirmed the district court's determination that the plaintiff had no grounds for asserting equitable tolling

or estoppel. *Id.* ¶¶ 10-32. Among other arguments, the plaintiff relied on our holding in *Jacobs* and urged that courts should "construct yet 'another detriment' to contracting without a license." *Id.* ¶ 32. We declined to take that step, stating:

> Though we acknowledge the importance of the policy denying unlicensed contractors the fruits of licensure—payment for their work and a statute of repose—we have found no basis to hold that equitable tolling or estoppel is triggered as a matter of law by Baigas's unlicensed status . . . . The statute of limitations is an affirmative defense available to all defendants, and we will not extend our previous holding here to create a legal bar to unlicensed contractors invoking it.

*Id.*

{37} Applying this body of precedent to the case at bar, we conclude that to serve and advance CILA's purposes, it is not necessary to construe Section 60-13-30(A) to bar, in a manner that varies from the statute's plain meaning, a licensed general contractor from collecting compensation for its own work, even though it is barred from collecting compensation for an unlicensed subcontractor's work. The existing sanctions are sufficient to prevent unlicensed contractors from "flourish[ing] and profit[ing] at the expense of the public." *Mascarenas*, 1991-NMSC-014, ¶ 14. First, the statute bars a general contractor from collecting from the owner compensation for work that an unlicensed subcontractor has performed. *See Valles*, 2010-NMSC-004, ¶ 41. Second, if the general contractor has not yet paid the unlicensed subcontractor for the work, then the subcontractor is barred from collecting payment from the general contractor. *See Romero v. Parker*, 2009-NMCA-047, ¶¶ 1, 3, 27,

24

146 N.M. 116, 207 P.3d 350. Third, if the general contractor has paid the unlicensed subcontractor, then the general contractor cannot recover what it has paid to the unlicensed subcontractor. *See id.* ¶¶ 1, 20-24. Fourth, if the general contractor has obtained payment from the owner for the unlicensed subcontractor's work, the general contractor is subject to disgorgement of the payment. *See Mascaraenas*, 1991-NMSC-014, ¶ 16. We believe these economic sanctions, as well as the additional threat of criminal prosecution under Section 60-13-52(A) for contracting without a license, are sufficient incentive for a licensed general contractor to act diligently to verify that its subcontractors are licensed to perform the work the general contractor gives them, and for subcontractors to obtain licenses for the work that they undertake to perform.

{38} We note that the concerns that prompted the harsh sanctions in *Mascarenas* are not present here. As stated, in *Mascarenas*, the Court construed Section 60-13-30(A) to require disgorgement of amounts an owner previously had paid the unlicensed contractor for his work, notwithstanding that the statute by its terms bars only actions by the unlicensed contractor to collect unpaid compensation from the owner. *Mascarenas*, 1991-NMSC-014, ¶ 16. The Court found this sanction necessary to prevent unlicensed contractors from "evad[ing] the harsh consequences of [the statute] by collecting most or all of the contract price before significant commencement of performance." *Id.* Allowing a licensed contractor partial recovery

25

on a contract for work other than that performed by an unlicensed subcontractor does not give rise to this risk of evasion.

{39} Similarly, in *Gamboa v. Urena*, 2004-NMCA-053, ¶ 2, 135 N.M. 515, 90 P.3d 534, an unlicensed contractor fabricated and installed cabinets and countertops for homeowners. This Court accepted, for purposes of its decision, the contractor's testimony that he charged only for the cost of fabrication, which did not require a contractor's license, *see* § 60-13-3(D)(1), and did not charge for the cost of installation, which required a license, *see* § 60-13-3(A). *Gamboa*, 2004-NMCA-053, ¶¶ 10-11. In ruling that Section 60-13-30(A) nevertheless barred the contractor from collecting compensation for his work, we stressed that, if we allowed an unlicensed contractor to obtain recovery in such circumstances, "we would encourage contractors to engage in creative contract[ing] whereby they attribute all charges to the cost of materials and supplies and charge nothing for labor." *Gamboa*, 2004-NMCA-053, ¶ 16. That risk is not present here. JJJ Painting made no argument that De la Rosa or Viegas provided labor or goods that did not require licensure, and the district court barred JJJ Painting, without qualification, from collecting any compensation for De la Rosa's and Viegas's work. We see little risk of this type of "creative contracting" that would enable a licensed contractor to receive compensation for the work of an unlicensed subcontractor.

26

**{40}** In summary, construing Section 60-13-30(A) to bar JJJ Painting only from recovering the amounts it paid to its unlicensed subcontractors for work those unlicensed subcontractors performed does not lead to any absurd or unreasonable consequences, or to injustice or contradiction. Consequently, we need not give the statute any different construction to effectuate the Legislature's intent. *See Valles*, 2010-NMSC-004, ¶ 14.

### D. Practical Consequences

**{41}** *Valles* instructs us to also consider the "practical implications" of any construction of Section 60-13-30(A). 2010-NMSC-004, ¶ 15. Kemp argues that allowing a general contractor to collect compensation for its work on a contract while denying compensation for the work of an unlicensed subcontractor "creates an unworkable lien recovery system." He asserts that litigation to allocate the work of the licensed contractor and its unlicensed subcontractor and then quantify the values of each one's work would be "incredibly complex, expensive, and time-wasting." He complains of the burden of calling the contractor and subcontractor to testify about "who nailed what nail or what section of the wall they each painted," and of "quantifying the value of each minuscule and independent action."

**{42}** While quantifying damages in construction contract disputes can be complicated, the questions in this case were relatively straightforward: what drywall and stucco work did JJJ Painting and its employees perform, and what was the value

of that work; and what work did De la Rosa and Viegas perform, and what was the value of that work? The invoices established how much JJJ Painting charged Atlas for all of its work. There was testimony here, and in many cases there will be records as well, to establish what the general contractor has paid its subcontractors, which amounts presumably will reflect the value of their work. In any event, the burden to prove licensure is on the contractor, *see* § 60-13-30(A), and NMSA 1978, Section 48-2-14 (2007) allows a party in a mechanic's lien dispute, if successful, to recover its attorney fees. For these reasons, we do not view the task of presenting evidence about "mixed contracts" as a practical implication that would justify departure from the plain meaning of Section 60-13-30(A).

**E.    Public Policy Favoring Enforcement of Contracts**

{43}    Lastly, we are mindful of New Mexico's public policy in favor of enforcing contracts. "New Mexico . . . has a strong public policy of freedom to contract that requires enforcement of contracts unless they clearly contravene some law or rule of public morals." *United Wholesale Liquor Co. v. Brown-Forman Distillers Corp.*, 1989-NMSC-030, ¶ 14, 108 N.M. 467, 775 P.2d 233; *see First Baptist Church of Roswell v. Yates Petroleum Corp.*, 2015-NMSC-004, ¶ 12, 345 P.3d 310 (same). By enacting Section 60-13-30(A), our Legislature has made clear that, notwithstanding a contract to the contrary, an unlicensed contractor cannot collect compensation for its work. And in *Valles* our Supreme Court construed the statute also to bar a licensed

28

contractor from collecting compensation for work performed by the contractor's unlicensed subcontractor. 2010-NMSC-004, ¶¶ 36-42. However, as discussed above, Section 60-13-30(A) by its plain language does not bar, much less clearly bar, a licensed contractor from collecting compensation for its own work, even if compensation cannot be recovered for the work of an unlicensed subcontractor on the same contract or project. In the absence of clear language to the contrary, the public policy favoring enforcement of contracts supports enforcing the parties' contract to the extent of allowing JJJ Painting to recover for its own work.

## F. Other Jurisdictions' Partial Validity Rules

{44}    Kemp argues in the alternative that, should this Court determine that Section 60-13-30(A) allows a licensed contractor to collect compensation for its own work on a contract even though it cannot collect compensation for the work of an unlicensed subcontractor on the same contract, the right of recovery should be subject to two limitations: (1) the partial invalidity must have resulted from an honest mistake and not bad faith and (2) the valid and invalid portions of the claimed amount due can be separated. Kemp asserts that these limitations for recovery on partially valid liens are recognized in *Caird Engineering Works v. Seven-up Gold Mining Co.*, 111 P.2d 267, 279 (Mont. 1940); *Palmer v. McGinness*, 102 N.W. 802, 803 (Iowa 1905); and *Kittrell v. Hopkins*, 90 S.W. 109, 110 (Mo. Ct. App. 1905), and that in this case JJJ Painting cannot satisfy either one.

29

**{45}** The cases cited by Kemp do not address liens that are partially invalid due to the participation of a contractor who has not met statutory licensing requirements, and at least one other jurisdiction has approved a licensed contractor's right to enforce the balance of a contract that is partially invalidated due to a subcontractor's unlicensed status. *See ThyssenKrupp Steel USA, LLC v. United Forming, Inc.*, 926 F. Supp. 2d 1286, 1297 (S.D. Ala. 2013) (declining to bar general contractor from recovering on such a contract). In any event, as discussed above, Section 60-13-30, other provisions of CILA, and New Mexico appellate court decisions applying Section 60-13-30 direct us to the answer here. Therefore, it is not necessary to look to other jurisdictions for guidance.

**CONCLUSION**

**{46}** Pursuant to Sections 60-13-2(I) and -3(D)(13), Defendant Jose Allen Sosa was exempt from Section 60-13-12(A)'s requirement that he be licensed to perform the contracting services that Defendant Jose Sosa d/b/a JJJ Painting provided to Atlas Group, LLC, as reflected in Invoice Nos. 303, 302, S-202, and S-217. Sections 60-13-30(A) and (B) therefore did not bar JJJ Painting from filing liens or taking legal action to collect compensation for Allen's and its other employees' work.

**{47}** Because Juan Viegas was not a licensed stucco contractor and Oscar De la Rosa was not established to be a licensed drywall contractor, and neither individual was a wage earner of JJJ Painting within the meaning of Sections 60-13-2(I)

30

and -3(D)(13), Sections 60-13-30(A) and (B) barred JJJ Painting from filing liens and taking legal action to collect compensation for those individuals' work as reflected on the invoices. However, that proscription did not further bar JJJ Painting from taking these steps to collect compensation for its employees' own work. We affirm the district court's July 16, 2024 final judgment.

{48}     Defendants' September 8, 2025, motion for a limited remand to the district court is denied as moot.

{49}     **IT IS SO ORDERED.**


_____
**HENRY M. BOHNHOFF, Judge, Retired,
Sitting by Designation**

**WE CONCUR:**


_____
**J. MILES HANISEE, Judge**


_____
**KATHERINE A. WRAY, Judge**

31